George BICKNELL, Appellant,

v.

Keith LLOYD et al., Appellees.

No. 01-81-0783-CV.

Court of Appeals of Texas, Houston (1st Dist.).

April 15, 1982.

Gerald Fugit, Houston, for appellant.

Gary J. Schroeder, Gonzales, for appellees.

Before EVANS, C. J., and DOYLE and STILLEY, JJ.

EVANS, Chief Justice.

The plaintiff brought this action on behalf of his six-year-old son, who sustained personal injuries when he was struck by a three-wheeled electric cart under the defendant's control, but being driven by two unidentified youths.

The cause was submitted to the jury on the theory of the defendant's negligence. Special Issue No. 1 reads:

Do you find from a preponderance of the evidence that on July 29, 1977, the defendant George Bicknell, was negligent in any of the following respects:

a) In leaving the red vehicle unattended in the thoroughfare adjacent to the point of plaintiff's injury?

b) In leaving the key to the red vehicle in the vehicle at the time of the incident of plaintiff's injury?

Answer: "We do" or "We do not".

Answer: ___We do___

Special issue No. 2 reads as follows:

Do you find from a preponderance of the evidence that such negligence was a proximate cause of any injury to the plaintiff?

Answer: "We do" or "We do not".

Answer: ___We do___

On the basis of the jury's findings on liability and damages, the trial court entered judgment in favor of the plaintiff in the amount of $6,637.50, representing past physical pain and mental anguish and medical and hospital expense, and for the sum of $600, representing the cost of transportation for medical attention.

In his first point of error, the defendant contends that the trial court erred in submitting the liability issues to the jury, arguing that the court's charge improperly allowed the jury to impute to him the negligence of another party.

The plaintiff testified that the incident occurred on a Friday afternoon in July, 1977. He and his family were attending a State 4–H Horse Show at the Astroarena in Houston. The plaintiff left his seat in the stands to assist his daughter, who was participating in a pole bending event, and he then walked to the restroom located under the bleachers. As he was returning to his seat, he heard a loud noise, and seeing a crowd gather, he stopped to investigate. He found his son lying on the ground with blood on both legs, and he saw the defendant's electric cart nearby. His son testified that two children had been playing on the cart in the midst of a crowd of people, and that when he walked behind the cart, it had suddenly backed up, pinning him against the wall, and injuring his legs. Both of his legs were broken, and casts were required to set the breaks.

The vehicle in question is a three-wheeled, battery-powered cart with an open driver's seat. Pictures in evidence show that it is painted a bright fire-engine red. It is approximately six feet long and thirty-six inches wide, and the driver and one

passenger may sit side by side on a flat, padded seat. A central steering bar provides directional control, and the vehicle's speed (up to about eight miles per hour) is controlled by a foot accelerator. When the electric motor is turned on, a push/pull lever moves the vehicle forward or backward. The electric power is controlled by an ignition switch, in which a key is inserted on the front face of the driver's seat.

The defendant testified that the cart belonged to his stepdaughter, but he admitted that he supervised the use of the cart and that he had brought the cart into the Astroarena to save walking from one place to the other. He testified that he had permitted officials of the 4–H Association to use the cart whenever they wanted to drive around the building area, and on the Monday prior to the accident, one of the 4–H officials, operating the cart for the first time, accidently turned over the cart as he made a circle, and "all the kids laughed at him." That same day, and on several occasions thereafter, a young boy took the cart without the defendant's permission, and the defendant became annoyed because the cart was not available when he needed it. The defendant further admitted that whenever the cart was being operated, children would crowd onto it, wanting a ride. The defendant testified that, as a final resort to keep the children from using the cart, he started removing the key from the switch and keeping it in his pocket. On the afternoon in question, he drove the cart to an area under the bleachers where there were concession stands and sales booths. He testified that he took the key out of the ignition switch before leaving the vehicle, and he said that the plaintiff was mistaken in his statement that he had observed the key in the ignition switch after the accident. However, he further testified that there was no evidence that the ignition switch had been "hot wired," and his only explanation for the child's injury was that the cart might have been pushed into him.

In support of his contention that the trial court erred in submitting the case to the jury, the defendant relies principally upon the holding in *Parker and Parker Construc-tion Co. v. Morris*, 346 S.W.2d 922 (Tex.Civ. App.—El Paso 1961, writ ref'd n.r.e.), in which the owner of a motor vehicle was held not to be liable for the negligent actions of an unknown person who had used the vehicle without authority, even though the owner had left the key in the vehicle. The facts in *Parker* are distinguishable from the circumstances in the case at bar. In that case and the cases cited therein, there was no evidence that a third party's unauthorized use of the vehicle could reasonably have been foreseen by the defendant. In the instant case, the evidence is undisputed that the red cart was a continuing temptation to young children, and that two unsupervised children were, in fact, driving the vehicle when it backed into the plaintiff's son. Both the plaintiff and a third party witness testified that the keys were in the cart both before and after the accident.

■ A party may be held responsible for a negligent omission which involves an unreasonable risk of harm to another through the foreseeable action of a third person. Restatement (Second) of Torts § 302, comment j (1965). Thus, even though an injury is the result of the unauthorized action of a third party, the party in possession or control may be liable if the character of the property is such that it "affords a peculiar temptation or opportunity for intentional interference likely to cause harm." Restatement (Second) of Torts § 302B, comment e, section G, illustration 14 (1965).

■ From all the circumstances surrounding the accident, the jury could have concluded that the defendant should have reasonably foreseen the unauthorized use of the vehicle by children in the area, and that harm was likely to result from its use unless the key was removed from the ignition switch. Thus, the jury was at liberty to decide that the defendant's failure to remove the key was negligence and the proximate cause of the injury to the plaintiff's son.

The defendant's first point of error is overruled.

In his second point of error, the defendant contends that the trial court erred in submitting an issue to the jury regarding the plaintiff's reasonable expenses incurred in transporting his son for medical attention. Under this point, he argues that the plaintiff's testimony was insufficient to establish proof of such expenses, and that the plaintiff failed to offer any receipts or other documentation in support thereof. This point will be overruled. The plaintiff was permitted to testify without objection as to his estimated mileage costs and the approximate number of trips made and estimated miles driven. The jury's award was well within the amount of expenses calculated on the basis of this testimony. Testimony regarding expenses incurred or payments made is admissible without production of substantiating records. *Cummings v. Van Valin*, 363 S.W.2d 385, 387 (Tex.Civ.App.—Waco 1962, writ ref'd. n.r.e.); *Jackman v. Jackman*, 533 S.W.2d 361, 362 (Tex.Civ.App.—San Antonio 1975, no writ). This point of error is overruled.

The trial court's judgment is affirmed.