ACCEPTED
03-14-00463-CV
4481270
THIRD COURT OF APPEALS
AUSTIN, TEXAS
3/12/2015 4:21:50 PM
JEFFREY D. KYLE
CLERK

Cause No. 03-14-00463-CV

| | | |
|---|---|---|
| DON & CAROL TITEL<br>Appellants | § | IN THE |
| | § | THIRD COURT OF |
| v. | | |
| | § | APPEALS, |
| MORRIS & LISA MELCHOR,<br>Appellees | § | TEXAS |

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
3/12/2015 4:21:50 PM
JEFFREY D. KYLE
Clerk

Appealed from the County Court at Law #2,

Travis County, Texas

Cause #C1-CV-14-004232

The Honorable David Phillips and Eric Shepperd Presiding

# APPELLANTS' BRIEF

PAUL C. VELTE IV
Counsel for Appellant
State Bar # 20541700
109 E. Hopkins St., Ste. 204
San Marcos, TX  78666
512-353-2299
Fax: 476-9504
Email:  velte@ptexans.com

Request for Oral Argument:  Oral Argument is Requested.

i

## Parties & Counsel

Appellants:  Don Titel and Carol Titel

Counsel for Appellant:
**Paul C. Velte IV** – 109 E. Hopkins St., Suite 204, San Marcos, TX  78666


Appellees:  Morris Melchor and Lisa Melchor

Trial Counsel for Appellee:
**Jay Lea**, 8310 Capital of Texas Highway, North, Suite 490, Austin, Texas 78731

On appeal:  Same.

# TABLE OF CONTENTS

PARTIES & COUNSEL .........................................................................II

TABLE OF CONTENTS ......................................................................III

INDEX OF AUTHORITIES .................................................................IV

STATEMENT OF THE CASE ...............................................................5

ISSUES PRESENTED .........................................................................5

STATEMENT OF FACTS ....................................................................6

SUMMARY OF ARGUMENT.............................................................12

ARGUMENT & AUTHORITIES.........................................................13

ISSUE #1:  THE GRANT OF SUMMARY JUDGMENT WAS IMPROPER.13

PRAYER...........................................................................................20

APPENDIX.......................................................................................21

# INDEX OF AUTHORITIES

## CASES

*Bessette v. Humiston*, 121 Vt. 325, 326; 157 A.2d 468 (1960). ....................................................20

*Bicknell v. Lloyd*, 635 S.W.2d 150, 152 (Tex.App.--Houston [1st Dist.] 1982). .........................14

*Nixon v. Mr. Property Mgmt. Co., Inc.*, 690 S.W.2d 546, 548-49 (Tex. 1985)............................16

## TREATISES

2 Restatement of Torts 2d, § 302 (1965)......................................................................................13

2 Restatement of Torts 2d, § 302A (1965) ...................................................................................14

2 Restatement of Torts 2d, § 302A (1965) cmt *c*. ......................................................................17

2 Restatement of Torts 2d, § 302B (1965) ...................................................................................14

2 Restatement of Torts 2d, §290 (1965) cmt *i* ...........................................................................18

2 Restatement of Torts 2d, §290 (1965) cmt *j* ...........................................................................18

2 Restatement of Torts 2d, §290 (1965) cmt *k* ..........................................................................18

57A AM. JUR. 2D, § 122. ..............................................................................................................19

57A AM. JUR. 2D, § 123. ..............................................................................................................19

57A AM. JUR. 2D, § 124 ...............................................................................................................19

57B AM. JUR. 2D, § 1114 .............................................................................................................19

57B AM. JUR. 2D, § 1117 .............................................................................................................19

TO THE HONORABLE JUSTICES OF THE COURT OF APPEALS:

## Statement of the Case

This is a negligence suit for damages caused by a fire set by children on neighboring land. Appellants sued the owners and others in control of the children and the property where the children resided.[1] The appellees moved for summary judgment,[2] which was granted on all claims, that appellants take nothing against the landowners.[3] Summary judgment proofs consisted of affidavits, depositions, insurance policies produced by appellees, and a certified copy of a fire marshall's report. A severance was had,[4] and later new evidence was introduced on a motion for new trial;[5] however, this did not change the ruling. This appeal followed.

## Issues Presented

1.    Grant of Summary Judgment was Improper

---

[1] CR 56 and 417 (Plaintiffs' 3rd and 4th Amended Petitions in Part III-B alleges the claims against the appellees) (in this brief, the Clerk's Record will be cited as "CR" and the Supplemental Clerk's Record as "SCR"). Citations to both the Clerk's records and the depositions will be provided. Note that the Supplemental Clerk's Record contains better scans than the same material in the original Clerk's Record, and will be cited more often for that reason. The trial court had before it all the contents of both the CR and the SCR at the time it considered the Motion for New Trial.

[2] CR 11.

[3] CR 412.

[4] CR 414.

[5] CR 595.

## Statement of Facts

A fire on July 11, 2011, consumed much of Appellant's property, causing damages within the jurisdiction of the Travis County Courts at Law. The Travis County Fire Marshall's report establishes that two children started two fires that day. They extinguished the first, but were unable to extinguish the second.[6] Deputy Fire Marshall Daniel Berger testified that the children admitted to starting the fire at the scene on the day of the fire.[7] There is some dispute as to the specific involvement of each child, but that is of no consequence in this appeal, since it is Appellees' general negligence in creating the situation that forms the basis of Appellants' claims against them.

Appellees bought a house and one acre lot at 693 Pickett Lane in Travis County.[8] At the time of acquisition it was surrounded on all sides by a 16 acre tract owned by Jose and Yolanda Rodriguez.[9] Appellees' single acre was mostly denuded of brush, but the surrounding 16 acres was thickly wooded cedar brush.[10] They each testified that their son Jeremy was living there at their pleasure[11] for the main purpose of providing a stable home in a wholesome environment for their grandchildren.[12] Specifically, three grandchildren by a son who had never done well for himself and was unstable in employment.[13] Appellees testified several

---

[6] CR 509 at 522. As a certified copy of a public record, it is admissible in evidence under Rule 803(8)(C). The inartful heading of the Fire Marshall's affidavit calling it a 'business record' notwithstanding, the affidavit clearly states that Item #2 is a true copy of Deputy Fire Marshall Daniel Berger's Report and is a public record on file with the Travis County Fire Marshal's Office.

[7] CR 76 at 95 (Daniel Berger Depo. Page 20 lines 9 – 18) and at CR 108-109 (Depo. p. 33 line 4 to p. 34 line 22).

[8] See map included in the Appendix as item 4.

[9] Morris Melchor Depo. 25:7 – 26:14 (CR 538-39)(Map exhibit appears at SCR 447).

[10] *Id.* at 33:8 – 18 (CR 544).

[11] Morris Melchor Depo. 47:20 - 48:6 (see CR 525 at 553-54). Note that Ms. Lisa Melchor testified she agreed with everything her husband had testified to in his deposition other than perhaps some dates and ages of children. Lisa Melchor Depo. 4:9 – 20 (CR 505 at 506).

[12] Morris Melchor Depo. 20:14 to 21:1 (CR at 534-35) and 24:15 to 25:23 (CR at 537-38).

[13] *Id.*

times that Jeremy's job was to manage the place to provide a good home for the grandchildren; and if that did not happen, then Jeremy was out.[14]  Apellees agreed that Jeremy's primary incentive to manage the property well for them, which included fixing it up for eventual resale,[15] was to provide a good home for his children.[16]

These parents provide their son Jeremy with a job,[17] a truck,[18] and a home.[19] They financed his schooling for a state HVAC license,[20] a custody battle with his first wife,[21] and his defense in this suit.[22]  They let Jeremy choose contractors to do work on their home,[23] yet his parents paid for, and controlled the details of repairs,[24] and new construction,[25] used the place for equipment storage for their restaurant business,[26] and carried the electric service in their name for "about a year,"[27] after Jeremy moved in after purchase.[28]

Morris Melchor considers himself a family oriented man,[29] who runs a family business[30] employing four of his children[31] among 11 restaurants, and extended family in most locations.[32]  Appellant Lisa Melchor took over daily care of

---

[14] Morris Melchor Depo. 47:20 to 48:6 (CR 553-54); 95:3 – 5 (CR 561).
[15] *Id*. at 38:18–22 and 41:7-13 (CR 549 and 552).
[16] Morris Melchor Depo. 96:9 – 16 (CR 562).  Ms. Lisa Melchor testified she agreed with everything her husband had testified to in his deposition other than perhaps some dates and ages of children.  Lisa Melchor Depo. 4:9 - 20.
[17] Morris Melchor Depo. 20:8 – 13 (CR 533)
[18] *Id.* 21:2 –3 (CR 534).
[19] *Id.* 20:14 – 25 (CR 533).
[20] *Id* 21:6 – 15 (CR 534).
[21] *Id.* 21:20 to 22:15 (CR 534).
[22] *Id.* 23:19 – 22 (CR 536).
[23] *Id*. at 26:1 – 9 (CR 539).
[24] *Id.* 39:25 to 40:7 (CR 550-51).
[25] *Id.* 30:18 to 31:16 (CR 542-43).
[26] *Id.* 40:8 – 16 (CR 551).
[27] *Id.* 85:11 – 21 (CR 560).
[28] *Id*. 25:17 – 19 (CR 538)
[29] *Id* 10:25 to 11:1 (CR 526-27).
[30] *Id.* 10:17 – 24 (CR 526).
[31] *Id*. 14:21 –25 (CR 530).

Jeremy's children for some period of months after Jeremy's second wife, Joi Nelson, decided to leave after a violent incident with Jeremy.[33]

The policy of insurance covering 693 Pickett Lane, purchased by Jeremy's parents, clearly indicates that they insured the property as a second home occupied by "immediate family" as late as 2013. The policy declarations page and the definitions in the policy make a clear distinction between "immediate family" occupied and "tenant occupied" properties.[34] Their property at 693 Pickett was also covered as an "additional residence" on a liability policy at the time of the fire.[35] There was no written lease.[36]

A burn ban was in effect for Travis County in the summer of 2011.[37] Due to drought conditions, the risk of wildfires was quite high for much of our State. Appellees and their son were aware of the ban and of fires that plagued much of Texas in the summer of 2011.[38] The nature of the land in the region of Appellees' property--covered with thick, undeveloped native Texas vegetation--made the risk of wildfire even more acute.[39] Appellees were aware that more than their own grandchildren were being invited out to their land, but chose to exercise no oversight or control, other than to delegate to their son all authority to control conditions on their property. When they bought the place, Appellees knew at least six children would be living on their property.[40]

---

[32] *Id*. 15:14 to 16:5 (CR 531-32).
[33] Jose Rodriguez Depo. 33:17 - 35:19 (CR 340-42); Joi Nelson Depo. 27:10-24 (CR 743).
[34] See Germania Policy declarations page and relevant portions of the policy (CR 73-75).
[35] The relevant declaration page appears at CR 621-22).
[36] Joi Nelson Depo. 96 (CR 812); Jeremy Melchor Depo. 19:13-15 (SCR 466).
[37] Daniel Berger Depo. 14:8 – 16:5 (CR 89-91).
[38] Morris Melchor Depo. 35:13 – 36:5 (CR 546-547); Jeremy Melchor Depo. at 21:10 – 23 (CR 498).
[39] Daniel Berger Depo. 7:5-8:20 (CR 82-83).
[40] Joi Nelson Depo. 4:21-7:25 (CR 720-23). When they split, Jeremy had Mandy move in, and Appellees knew she had children as well.

Under Jeremy's care children were allowed and encouraged to trespass to explore and play on the surrounding wooded acreage—treating the Rodriguez's surrounding acreage as if it were their own.[41] There is some evidence Appellee Lisa Melchor knew of this.[42] Lisa Melchor at one point even ran Rodriguez off his own property.[43] Both Appellees attended family events when children were off playing in the woods.[44]

Per Rodriguez, Jeremy pulled a gun on him across the property line[45] and drove over and broke fence posts Rodriguez was erecting around the Appellees' square acre.[46] Rodriguez had no problems before Appellees bought their acre and their son Jeremy moved in.[47] Nor had he ever see signs of trespassing on his property.[48] Joi Nelson testified that Jeremy's intent was to harass Rodriguez so he would sell.[49] This tactic ultimately succeeded, as Rodriguez ended up selling his 16 acres to Appellees at a loss.[50] Rodriguez stated that the final straw event that made him decide to sell his 16 acres surrounding the Melchor's acre was the fire that is the subject of this suit.[51]

Other neighbors tell a story of a chronic lack of adult supervision of the Melchors' grandchildren. It became a topic of discussion and concern among their neighbors.[52] Neighbors' affidavits show that the Melchor children were frequently

---

[41] *See* Jose Rodriguez Depo. 25:18 – 26:7 (CR 332-33); Joi Nelson Depo. 24:13-25:10 (CR 740-41), 27:5-9 (CR 743), 29:9-30:2 (CR 745-46), and 35:17-37:12 (CR751-53); Morris Melchor Depo. 56:24 – 57:4 (SCR 672-73).
[42] Jose Rodriguez Depo. 34:9-35:15 (CR 341-42).
[43] Jose Rodriguez Depo. 37:6-38:17 (CR 344-45); 81:14-21 (CR 388).
[44] Joi Nelson Depo. 95:18-23 (CR 811). "They would wander off and go do what kids do: go play by themselves." *Id*. at 95:24-96:2 (CR 811-12).
[45] Jose Rodriguez Depo. 41:2-20 (CR 348).
[46] Jose Rodriguez Depo. 14:22-16:2 (CR 321-23).
[47] Jose Rodriguez Depo. 36:18-37 (CR 343).
[48] *Id.*
[49] Joi Nelson Depo. 28:20-30:14 (CR 744-46).
[50] Jose Rodriguez Depo. 49:17-50:8 (CR 356-57).
[51] Jose Rodriguez Depo. 49:3-16 (CR 356).

9

left unsupervised, at home and elsewhere,[53] to the point where one neighbor felt he needed to feed them,[54] and another, Sharon Watson, refused to allow her six children to go over to play at the Melchor's residence because there was "no adult supervision at the Melchor residence."[55] The Melchor children were known to trespass on their neighbors' land.[56] Dean Shoemaker says after telling them they were no longer welcome, he still had to run them off "several more times."[57] He also caught the oldest Melchor (Clayton) boy inside his workshop on one occasion.[58] Joi Nelson found the Appellee's grandchildren left alone on the Melchor property on two occasions.[59] Jose Rodriguez testified that children at the Appellees' property "were always outside and there was nobody watching over them."[60] He also stated he found evidence children were all over his property because he would find toys, clothing, dolls, cars, tents, and property damage.[61]

There is evidence in the record that Jeremy was a heavy smoker[62] in the years before the fire, while Joi Nelson and six children were living with him.[63] He had a habit of misplacing and losing track of his cigarette lighters,[64] so extras were kept in various locations to replace them.[65] Mandy Edwards, Jeremy's live-in girlfriend (after Joi Nelson and her children moved out) was a smoker too.[66] There is also

---

[52] Affidavit of Royce Reid, p. 3.
[53] Affidavit of Sharon Watson and Royce Reid, p. 2 ("[T]he Melchor kids had a reputation for being unsupervised….")
[54] Affidavit of Dean Shoemaker.
[55] Affidavit of Sharon Watson, p. 1.
[56] Affidavit of Amanda Benedict; Jose Rodriguez Depo. 25:1 - 25.
[57] Affidavit of Dean Shoemaker, p. 2.
[58] *Id.*
[59] Joi Nelson Depo. 38:19-39:1 (CR 754-55).
[60] Jose Rodriguez Depo. 26:8-11 (CR 343).
[61] Jose Rodriguez Depo. 25:18-26:21 (SCR 367-68).
[62] Joi Nelson Depo. 53:10-14 (CR 769).
[63] Joi Nelson Depo. 55:4-10 (CR 771).
[64] Joi Nelson Depo. 53:15-55:3 (CR 769-771).
[65] Joi Nelson Depo 54:10-15 (CR 770).
[66] Mandy Edwards Depo. 32:4-9 (SCR 296).

evidence of a third smoker:  Jeremy's oldest son Clayton.  Before the fire, one neighbor, Sharon Watson says Clayton offered her son a cigarette, and when she confronted him, Clayton told her he was allowed to smoke.[67]  The boy would have been approximately age 11.[68]  Joi Nelson testified Clayton admitted to her that, as late as 2013, he was smoking cigarettes and pot that Jeremy's girlfriend, Mandy Edwards, left lying around.[69]

On the occasion of the July, 2011, fire Morrissa Melchor, according to her testimony, then age nine, was charged with supervision of seven year old[70] Ben McKeever, the son of Mandy Edwards, who had come to stay for a few weeks for summer visitation.[71]  As was customary for children staying at the Melchors' home, the two children were permitted to leave the Melchor's one acre lot to roam onto neighboring wooded property.[72]  Morrissa claims she took Ben to a 'fort' the children had built, but lost sight of him.[73]  Ben McKeever told Daniel Berger he obtained a cigarette lighter from inside the Melchor's residence;[74] Morrissa, on the other hand, says Ben took it from a chair outside on the porch.[75]  Ben stated

---

[67] Affidavit of Sharon Watson, p. 2.  The boy's admission should be considered admissible evidence as an admission against interest.
[68] Mandy Edwards Depo. 59:20-25 (SCR 323)(the boy was 13 at the time of her deposition, and the fire occurred some 22 months earlier).
[69] Joi Nelson Depo. 52:16 - 53:9 (CR 768-69).  The fact that this was happening some two years *after* the fire shows a pattern of negligence of Jeremy Melchor and the other adults Appellees left in charge of their property.  A reasonable inference is that the same behavior was going on before the fire.
[70] Morrisa Melchor Depo. 40:8-41:19 (SCR 568-69).
[71] Jeremy Melchor Depo. 17:1 – 8 (SCR 464).
[72] *See* n. 41, *supra*.
[73] Morissa Melchor Depo. 34:11-18 (SCR 562-63).
[74] Daniel Berger Depo. 36:11 – 13 (CR 111).
[75] Morrissa Melchor Depo. 11:25 - 12:17 (SCR 539-40).

Morrissa told him to light the fire; Morrissa denied this in deposition,[76] but did not deny it the day of the fire.[77] No portion of the Melchor's one acre lot was involved in the conflagration.[78] As late as 2013, Ben's mother, Mandy Edwards, also a defendant below, stated she was still not convinced that Ben started the fire; she believes he is merely 'taking the blame' for it.[79]

## Summary of Argument

The trial court did not state any ground for its ruling. Plaintiffs' supplied the trial court with summary judgment proofs sufficient to prevent a summary judgment on their negligence claims against the Appellees. The Third & Fourth Amended Petitions alleged that Appellees were negligent in creating a menacing situation that endangered the lives and property of everyone in the vicinity of their property. They bought the property (ostensibly) to raise children—then managed the property in such a way that put children at risk. They introduced young children to the wilds of the thick, brush covered hill country of central Texas and used the land surrounding theirs as a playland for children. When drought conditions descended upon the area, neither they nor their agents in charge of their house made any changes, and at all times encouraged or allowed children to roam and play on *neighbors' lands*, completely unsupervised, all while doing little or nothing to teach them of the hazards of wildfire on such land.

---

[76] *Id*. 39:12 – 19 (SCR 567).
[77] Daniel Berger Depo. Cf. 107:16 – 25 (CR 182) to 117:7–119:18 (CR 192-194).
[78] Jeremy Melchor Depo. at 21:7 – 9 (SCR 468). Other summary judgment proofs show that the point of ignition was far from Appellee's property, close to Ivy Lane. See e.g., Daniel Berger's deposition at pp. 51:6–54:1 (CR 126-129, stating that the ignition point was on the lot designated "355404" and compare to Exhibit 1 to Morris Melchor's Depo. (CR 723)(Appendix Item 4).
[79] Mandy Edwards Depo. 35:10-22 (SCR 299).

12

The summary judgment proofs support an inference that the other defendants (Jeremy Melchor and Mandy Edwards) were acting as the agents of Appellees in their management of the property and/or were joint venturers in an enterprise specifically created for the purpose of raising children (and improving the family's estate). This means Appellees have potential liability either in their own right, or vicariously through their chosen agents, due to the acts of their agents in actual daily custody and control of their property located in the middle of what was literally a mountain of tinder during drought conditions.

Appellees, as owners, had a duty to their neighbors as well as the power to control the actions of their agents and invitees to prevent harm to their surrounding neighbors. In short they may have *some* liability for negligently failing to control their agents, invitees, and their activities. There is a jury question at the least.

**Argument & Authorities**

## Issue #1: The grant of summary judgment was improper.

Counsel has been unable to find a case that is analogous to this one: Where an absent landowner turned day-to-day control over to his agents who, in turn, allowed children to trespass regularly upon land everyone knows is not theirs— land particularly suited to raging wildfires—where the children indeed start a fire that traverses property lines and damages a neighbor. Most every case involves a fire started on one's own property due to atrocious conditions.

However, the Restatement of Torts (Second), Section 302, *et seq.*, provides a basis for liability on facts like the ones in this case. That section has been approved and followed in one Texas case,[80] and in no case has it been disapproved as a correct statement of the law of negligence in Texas. That section and specifically 302A[81] and 302B,[82] make the foreseeable negligence of third persons,

---

[80] *Bicknell v. Lloyd*, 635 S.W.2d 150, 152 (Tex.App.--Houston [1st Dist.] 1982).

and the foreseeable intentional, or even criminal, conduct of third persons the basis of liability <u>if a reasonable person would have taken steps to avoid the risk of harm presented by the conduct of such third persons</u>.

Dry Brush County + Unsupervised & Untrained Children = Danger of Wildfires

The salient facts that have been included in the summary judgment proofs are that the conditions upon Defendants' property in July of 2011--and indeed, the entire region of central Texas--presented a well known and extreme risk of wildfire.[83]  A burn ban was in effect in Travis County and almost every county in Texas.  The type of land owned by Appellees for the use of their child and grandchildren—plus any others he brought out there—is *more* dangerous due to the amount of fuel that's available for burning,[84] and most owners of such land are aware of the increased risk.[85]

Appellants submit the mere ownership of such land brings with it a certain responsibility not to take unreasonable risks.  Appellants contend introducing children into such an environment without supervision or special training is taking an unreasonable risk.  Drought conditions required *some* further steps to ensure the children did not do what children are known to do:  play with fire.  Allowing one's own children to trespass and play on other's land, and to take other children,

---

[81] "An act or an omission may be negligent if the actor realizes or should realize that it involves an unreasonable risk of harm to another through the negligent or reckless conduct of the other *or a third person."*  2 Restatement of Torts 2d, § 302A (1965). (emphasis added).

[82] "An act or an omission may be negligent if the actor realizes or should realize that it involves an unreasonable risk of harm to another through the conduct of the other *or a third person which is intended to cause harm*, even though such conduct is criminal."  2 Restatement of Torts 2d, § 302B (1965)(emphasis added).  No one in this case contends the children intended the result of the fire they started, but this section is cited to show that the intent of the children is irrelevant. The children acted either negligently or intentionally in setting the fire.

[83] Daniel Berger Depo. 8:2-10:13 (CR 83-85)

[84] *Id*. at 8:2-20 (CR 83).

[85] *Id*. at 10:6-13 (CR 85).

14

visiting for short periods, to do likewise, with no direct adult supervision or education on the risks presented by fire in such environs is what these Appellees and their agents did. A similar case held:

> We know of no decision which holds that one who maintains his property so negligently that it menaces his neighbors, is liable for the destruction of their premises by a fire which started upon his, only in the event that he himself applied the match. To the contrary, we are satisfied that the owner's negligence is the proximate cause of the damage to the neighbor, even if a stranger communicated the spark; unless the circumstances are such that no prudent person would have anticipated the stranger's act.

*Arneil v. Schnitzer*, 173 Or. 179, 207; 144 P.2d 707, __ (1944).

As stewards of drought-stricken brush land, the Appellees and other defendants were remarkably careless in introducing young children into such a dangerous environment. This appeal could well have been one involving the death of those children. Instead, the fire blew North toward Appellant's house, away from the Melchor's property, sparing Appellees any loss.[86]

The summary judgment proofs show that Appellees and their agents—their son and his wife and girlfriends—made little or no provision for adequate supervision, discipline, training, and control of minor children that they introduced into their rural setting. No one gave one child, Ben McKeever, any warning or training before allowing the seven year old to roam upon neighboring thickly wooded land.[87] The summary judgment evidence shows a distinct lack of adult supervision of the Melchor's children but more than that, encouragement to play on surrounding heavily wooded land that did not even belong to the Melchor family.[88]

---

[86] Morris Melchor Depo. 49:7-12 (SCR 665).
[87] Mandy Edwards Depo. 45:1 to 47:1 (SCR 309-11); Morris Melchor Depo. 45:2-50:14 (SCR 661-666).
[88] *See* n. 40, supra.

Appellees bought the land for Jeremy and his girlfriend Joi Nelson, who had three children of her own, so together they had six children. In review of summary judgments, "Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor." *Nixon v. Mr. Property Mgmt. Co., Inc.*, 690 S.W.2d 546, 548-49 (Tex. 1985). It is a reasonable inference that the Appellees knew these six children had run of the place, and were venturing well off their one acre. Joi Nelson testified that when Appellees would visit for BBQ, birthdays, Christmas and holidays, the children would play in the woods.[89] Likewise, it is a reasonable inference that Appellees knew of their son's smoking habit and general irresponsible character.[90] There is direct evidence they were aware of both.[91]

Appellees knew or should have known how their son was managing the use of their property for the purpose they stated. Raising children was, after all, the reason Appellees bought the property. On these facts one wonders if Appellees bought this rural, secluded home to *enable* or conceal Jeremy's general neglectful supervision.[92] They knew or should have known of the drought conditions in the area, the burn ban in effect, and that children are known to play with fire. They chose to remain 'hands off' and allow their son Jeremy to do whatever he wanted on their property,[93] and chose to remain ignorant of the persons being invited there and their activities.

---

[89] Joi Nelson Depo. 95:18-23 (CR 811).

[90] Jeremy was known as the 'black sheep' of the Melchor family. Joi Nelson Depo. 61:12-62:14 (CR 777-78), he was violent. *Id.* at 64:8-20 (CR 780). Both Jose Rodriguez and Joi Nelson described an incident where Jeremy shot and knocked out all the windows of one or more vehicles. *Id.* at 27:10-24 (CR 743) and Rodriguez Depo. 20:1-11 (SCR 362).

[91] Joi Nelson Depo. 107:3-12 (CR 823). In describing Jeremy, Joi used the terms "dishonest," "destructive," "short tempered." Id. at 67:8-68:19 (CR 783-84).

[92] Joi Nelson Depo. 68:15-25 (CR 784); *see also* neighbors' affidavits to the same effect, *supra*.

[93] Joi Nelson Depo. 78:8-14 (CR 794); Morris Melchor Depo. 37:22-38:25 (SCR 653-54).

Children will be children, and Appellants contend it was entirely foreseeable that children from the city brought to such a rural setting, and allowed to roam at will unsupervised upon thickly wooded and brush-covered land, would at some point decide that starting a 'campfire' was a wonderful idea, causing grievous harm.  Notably, this harm was unlikely if only the Melchors had respected the property rights of their neighbors, and merely kept all children on their own lot, since it was mostly denuded of the incendiary brush that dominates the landscape in their immediate vicinity.[94]

That children will play with fire is a matter of common human knowledge.  In comment *c* to § 302A of the Restatement of Torts (second), we find:

> As stated in § 290, the actor is required to know the common qualities and habits of human beings, in so far as they are a matter of common knowledge in the community. …  the actor is required to know that there is a certain amount of negligence in the world, and that some human beings will fail on occasion to behave as a reasonable man would behave. *Where the possibility of such negligence involves an unreasonable risk of harm, either to the person who is to be negligent or to another, the actor, as a reasonable man, is required to take it into account* and govern his conduct accordingly.

(emphasis added).  In this case, the risk of wildfire was extreme, and the probability of negligent children therefore presented an unreasonable risk of harm.

Comment *i* to §290 of the Restatement, lists a situation closely analogous to the one alleged in the Plaintiffs' Petition:

> *Creation of situation which may become dangerous because of future events.*  Knowledge of the qualities, capacities, and tendencies of human beings and animals and the operations of natural forces is of the most obvious importance where the actor's conduct has <u>created a </u>

---

[94] Morris Melchor Depo. 36:6-37:1 (SCR 652-53).

situation which, without more, is not dangerous to anyone, but <u>which may become dangerous to others if it is subsequently acted upon by a human being</u> or animal or by a force of nature. …

(emphasis added).

Comment *j* adds:

The actor as a reasonable man should know the qualities, capacities, and tendencies of human beings, in so far as they are generally recognized at the time and in the community…

Comment *k* adds:

*Knowledge of traits of particular classes.* The actor as a reasonable man should also know the peculiar habits, traits, and tendencies which are known to be the characteristic of certain well-defined classes of human beings. <u>He should realize that the inexperience and immaturity of young children may lead them to act innocently in a way which an adult would recognize as culpably careless</u>….

(emphasis added).

Both Appellees and their son Jeremy testified that they were aware of the fire hazard presented by drought-stricken brush country such as theirs.[95] Appellees each admitted that it is common to expect that children will play with fire.[96] What they disclaim knowledge of, are the identities and number of the children who were invited to stay upon their property, or their activities.[97]

But willful ignorance does not avoid liability. "One under duty to use care for which knowledge is necessary cannot escape liability for negligence because of voluntary ignorance." 57A AM. JUR. 2D, § 122. "Liability for

---

[95] *See* Morris Melchor Depo. 34:18 to 36:5 (SCR 650-52) and Jeremy Melchor Depo. 21:10 – 23 (SCR 468).

[96] Lisa Melchor Depo. 12:12 to 13:2 (CR 507-08): Morris Melchor Depo. 11:13 to 13:4 (SCR 627-28).

[97] Morris Melchor Depo . 43:4-45:8 (SCR 659-661).

negligence may be predicated upon the lack of foresight or of forethought." *Id.* "Where a situation suggests investigation and inspection in order that its dangers may fully appear, the duty to make such investigation and inspection is imposed by law." *Id.* § 123. "The test of foreseeability is whether the ordinary person in the defendant's position, knowing what the defendant know [sic] or should have known, would anticipate that harm of the general nature of that suffered was likely to result." *Id.* § 124.

A finding of a joint enterprise could create vicarious liability for all members of the enterprise. 57B AM. JUR. 2D, § 1114; *see also* § 1117. Or alternatively, if their son Jeremy is found to be an agent of his parents, then liability for Jeremy's negligence may be imputed to his parents on that ground. *Id.* § 1117. The facts as supported in the summary judgment evidence could reasonably support a finding of either agency or perhaps even a joint enterprise. The acts described by their neighbor, Jose Rodriguez could support a finding of a joint enterprise of these defendants: The Melchors run a large family owned business of restaurants employing many family members. It is a reasonable inference that Jeremy worked in concert with Appellees to enlarge and improve the extended family's real estate holdings. Tearing down a fence on a neighbor's land is clearly the act of someone who feels he has the authority of a landowner.

That the defendants retained title and control of the property, and created this situation, buying it for their son to raise their grandchildren, and abdicating all control, is not in dispute. Appellees apparently wanted the benefits of ownership,[98] but not the responsibility. "Negligence may lie in the creation of a dangerous

---

[98] Joi Nelson noted she got nothing in her divorce for her investment in the property because it was in Appellees' names. Joi Nelson Depo. 96:24-98:15 (CR 812-14). Morris Melchor noted he intended to sell the property to recoup his investment after the grandchildren were grown. Morris Melchor Depo. 38:18-22 (654).

situation, although the final injury is activated by the conduct of a third person."
*Bessette v. Humiston*, 121 Vt. 325, 326; 157 A.2d 468, ___, (1960).

## Prayer

The summary judgment proofs are sufficient to warrant a trial on the merits, and therefore, no summary judgment should have been granted.  Appellants pray the judgment of the trial court be reversed and the cause remanded for a trial.

Respectfully Submitted,

Paul C. Velte IV
ATTORNEY FOR APPELLANTS
Bar #20541700
109 E. Hopkins St., Ste. 204
San Marcos, TX  78666
512-353-2299   Fax 512-476-9504
Email: velte@ptexans.com

CERTIFICATE OF SERVICE

I hereby certify that a copy of this document was served upon Jay Lea at the time of e-filing by e-service on March 11, 2015.

Paul C. Velte IV

CERTIFICATE OF LENGTH

I hereby certify that the length of this brief is 4022 words total.

# Appendix

1. Trial Court's Partial Summary Judgment
2. Trial Court's Order of Severance
3. Trial Court's Order Denying Motion for New Trial
4. Map – Exhibit 1 to Morris Melchor Deposition

# Appendix

1. Trial Court's Partial Summary Judgment
2. Trial Court's Order of Severance
3. Trial Court's Order Denying Motion for New Trial
4. Map – Exhibit 1 to Morris Melchor Deposition

| | | |
|---|---|---|
| DON TITEL & | § | IN THE COUNTY COURT |
| CAROL TITEL, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | AT LAW NO. 2 |
| JEREMY DAVID MELCHOR, | § | |
| MORRIS G. MELCHOR, | § | |
| LISA MELCHOR and | § | |
| MANDY EDWARDS, | § | |
| | § | |
| Defendants. | § | TRAVIS COUNTY, TEXAS |

## ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
*Granting Partial Summary Judgment.*

On this day came to be heard the Motion for Summary Judgment filed by Defendants Jeremy David Melchor, Morris G. Melchor and Lisa Melchor. After considering the Motion, the Response filed by Plaintiffs, the Reply filed by Defendants, the summary judgment evidence, and the arguments of counsel, the Court finds that Defendants' Motion should be GRANTED in part and DENIED in part.

IT IS, THEREFORE, ORDERED, ADJUDGED and DECREED that Defendant's Motion for Summary Judgment is hereby GRANTED in favor of Defendants Morris G. Melchor and Lisa Melchor as to all claims brought against them by Plaintiffs, and that Plaintiffs take nothing against Defendants Morris G. Melchor and Lisa Melchor, that all claims asserted by Plaintiffs against Defendants Morris G. Melchor and Lisa Melchor are dismissed with prejudice to the re-filing of same, that Defendants Morris G. Melchor and Lisa Melchor be discharged from this cause, and that all costs of court be taxed against Plaintiffs.

000824804

412

IT IS FURTHER ORDERED, ADJUDGED and DECREED that Defendants' Motion for

Summary Judgment as to Defendant Jeremy David Melchor is hereby DENIED.

SIGNED ON _____, 2013.

PRESIDING JUDGE

413

CAUSE NO. ~~C-1-CV-12-008224~~
CAUSE NO. ~~C-1-CV-12-008224B~~  C-1-CV-14-004232

| | | |
|---|---|---|
| DON TITEL & | § | IN THE COUNTY COURT |
| CAROL TITEL, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | AT LAW NO. 2 |
| | § | |
| JEREMY DAVID MELCHOR, | § | |
| MORRIS G. MELCHOR, | § | |
| LISA MELCHOR and | § | |
| MANDY EDWARDS, | § | |
| | § | |
| Defendants. | § | TRAVIS COUNTY, TEXAS |

## ORDER GRANTING DEFENDANT
## JEREMY MELCHOR'S MOTION TO SEVER

After considering Defendant Jeremy Melchor's Motion to Sever Defendants Morris G. Melchor and Lisa Melchor, any responses, the pleadings, and any arguments of counsel, the Court is of the opinion that the Motion should be GRANTED and orders the clerk of the court to assign the severed action the separate cause number of Cause No. C-1-CV-12-008224B and include in the file a copy of the documents reference below and which are attached hereto:

1. ~~Plaintiffs' Fourth Amended Petition, dated February 11, 2014;~~ *CM3*
   *All pleadings through the date of this order.*

2. Plaintiffs' Third Amended Petition, dated October 22, 2013;

3. Defendants Morris G. Melchor and Lisa Melchor's First Amended Answer, Special Exceptions, and Motion to Quash Discovery, dated September 6, 2013;



414

4. Defendants Jeremy David Melchor, Morris G. Melchor, and Lisa Melchor's Motion for Summary Judgment, dated September 27, 2013;

5. Plaintiffs' Response to Defendants' Motion for Summary Judgment, dated October 22, 2013;

6. Defendants Jeremy David Melchor, Morris G. Melchor, and Lisa Melchor's Reply in Support of Motion for Summary Judgment, dated October 25, 2013;

7. Plaintiff's First Amended Response to Defendants' Motion for Summary Judgment, dated November 26, 2013;

8. Order Granting Defendants' Motion for Summary Judgment, dated December 2, 2013;

9. Defendant's Motion to Sever, dated March 4, 2014; and

10. A copy of this Order.

The Court ORDERS that the severed case will be styled, Cause No. C-1-CV-12-008224B; Don Titel and Carol Titel v. Morris G. Melchor and Lisa Melchor, In the County Court at Law No. 2, Travis County, Texas.

The clerk is further instructed that the summary judgment entered against Plaintiff in Cause No. C-1-CV-12-008224; Don Titel and Carol Titel v. Jeremy David, Melchor, Morris G. Melchor, Lisa Melchor, and Mandy Edwards, In the County Court at Law No. 2, Travis County, Texas is to be entered as a final take nothing judgment against Plaintiff in Cause No. C-1-CV-12-008224B.

Furthermore, it is hereby ORDERED that all claims brought by Plaintiff against Morris G. Melchor and Lisa Melchor in Cause No. C-1-CV-12-008224; Don Titel and

415

Carol Titel v. Jeremy David, Melchor, Morris G. Melchor, Lisa Melchor, and Mandy Edwards, in the County Court at Law No. 2, Travis County, Texas but which are now severed into Cause No. C-1-CV-008224B are hereby dismissed with prejudice to the refilling of same.

The Court's order in Cause No. C-1-CV-12-08224B is final and appealable.

Signed this 14 day of _____ April _____, 2014.

_____
JUDGE PRESIDING

416

No. C1-CV-14-004232

| DON TITEL | | |
|---|---|---|
| CAROL TITEL | § | IN THE COUNTY COURT |
| Plaintiffs | | |
| v. | § | AT LAW #2 |
| MORRIS G. MELCHOR | § | TRAVIS COUNTY, TEXAS |
| and | | |
| LISA MELCHOR | § | |
| Defendants | | |

## ORDER DENYING MOTION FOR NEW TRIAL

After due consideration, the court hereby DENIES the Plaintiffs' Motion for New Trial.

June 30, 2014
Date                                    Judge Presiding



000880557



# Travis CAD - Map of Property ID 355439 for Year 2013



**Streets**

**Selected Property**

864 Feet

## Property Details

### Account

Property ID: 355439
Geo ID: 0533770157
Type: Real
Legal Description: ABS 2701 SUR 13 DAVIS D ACR 16.6400

### Location

Situs Address: ROUND MOUNTAIN RD TX 78641
Neighborhood: Land Region 145
Mapsco: 279Y
Jurisdictions: 0A, 03, 2J, 41, 68, 69

### Owner

Owner Name: MELCHOR MORRIS G & LISA C LIVING TRUST
Mailing Address: , 605 MARQUIS LN, CEDAR PARK, TX 78613

### Property

Appraised Value: $133,120.00

DEPOSITION EXHIBIT

10-7-13

http://propaccess.traviscad.org/Map/View/Map/1/355439/2013

**PropertyACCESS**

Map Disclaimer: This tax map was compiled solely for the use of TCAD. Areas depicted by these digital products are approximate, and are not necessarily accurate to mapping, surveying or engineering standards. Conclusions drawn from this information are the responsibility of the user. The TCAD makes no claims, promises or guarantees about the accuracy, completeness or adequacy of this information and expressly disclaims liability for any errors and omissions. The mapped data does not constitute a legal document.