ACCEPTED
03-14-00463-CV
4851573
THIRD COURT OF APPEALS
AUSTIN, TEXAS
4/10/2015 4:36:35 PM
JEFFREY D. KYLE
CLERK

CAUSE NO. 03-14-00463-CV

IN THE
THIRD COURT OF APPEALS
AUSTIN, TEXAS

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
4/10/2015 4:36:35 PM
JEFFREY D. KYLE
Clerk

DON TITEL AND CAROL TITEL

*Appellants*

VS.

MORRIS MELCHOR AND LISA MELCHOR

*Appellees*

From the County Court at Law No. 2, Cause # C1-CV14-004232
of Travis County, Texas
the Honorable David Phillips presiding

## BRIEF OF APPELLEES

**Jay P. Lea**
**State Bar No. 24062843**
**jlea@namanhowell.com**
**NAMAN, HOWELL, SMITH & LEE, PLLC**
**8310 N. Capital of Texas Highway,**
**Suite 490**
**Austin, Texas 78731**
**(512) 474-1901**
**FAX (512) 474-1901**

## ORAL ARGUMENT REQUESTED

# NAMES OF ALL PARTIES AND COUNSEL

Appellants:              Don & Carol Titel

Counsel for Appellants:  Paul C. Velte, IV
                         State Bar No. 20541700
                         PAUL C. VELTE, IV, ATTORNEY & COUNSELOR
                         109 E. Hopkins St.
                         Suite 204
                         San Marcos, Texas 78666
                         Telephone:  (512) 353-2299
                         Facsimile (512) 476-9504
                         Email: Velte@PTexans.com


Appellees:               Morris & Lisa Melchor

Counsel for Appellees:   Jay P. Lea
                         State Bar No. 24062843
                         NAMAN, HOWELL, SMITH & LEE, PLLC
                         8310 N. Capital of Texas Hwy.
                         Suite 490
                         Austin, Texas 78731
                         Telephone  (512) 479-0300
                         Facsimile (512) 474-1901
                         Email: JLea@NamanHowell.com

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL ....................................................ii

TABLE OF CONTENTS.............................................................................iii

INDEX OF AUTHORITIES........................................................................iv

STATEMENT OF THE CASE.......................................................................vi

ISSUES PRESENTED.................................................................................vii

    1. Did the Appellees have a duty to control the actions of minor
       children who were not in their legal custody or actual care? ............vii

    2. Did the Appellees have a duty to control Mandy Edwards'
       and/or Jeremy Melchor's supervision or discipline of their
       minor children? ..................................................................................vii

    3. Does Texas acknowledge a claim for negligent entrustment of
       real property?.....................................................................................vii

    4. Does Section 302 of the Restatement of Torts (Second) provide
       an independent basis for establishing a duty of care when other
       law specifically denies the duty? .......................................................vii

STATEMENT OF FACTS ............................................................................ 1

SUMMARY OF ARGUMENT ...................................................................... 3

ARGUMENT & AUTHORITIES ON ALL ISSUES ..................................... 6

CONCLUSION AND PRAYER .................................................................. 17

CERTIFICATE OF COMPLIANCE............................................................ 18

CERTIFICATE OF SERVICE .................................................................... 18

# INDEX OF AUTHORITIES

**CASES**

*City of Houston v. Clear Creek Basin Auth.,*
589 S.W.2d 671(Tex. 1979)........................................................... 3

*Joe v. Two Thirty-Nine Joint Venture,*
145 S.W.3d 150, 156 (Tex. 2004)................................................... 3

*Nixon v. Mr. Prop. Mgmt. Co.,*
690 S.W.2d 546, 548 (Tex. 1985)................................................... 4

*S. W. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002) ................ 4

*D. Houston, Inc. v. Love*, 92 S.W.3d 450, 454 (Tex. 2002) ........................... 4

*Chon Tri v. J.T.T.,* 162 S.W.3d 552, 563 (Tex. 2005).................................. 4

*El Chico Corp. v. Poole,* 732 S.W.2d 306, 311 (Tex. 1987)......................... 4

*Way v. Boy Scouts of Am.,* 856 S.W.2d 230, 233
(Tex. App.—Dallas 1993, writ denied) ........................................................ 4

*Providence Health Ctr. v. Dowell,* 262 S.W.3d 324 (Tex. 2008)................... 6

*Torrington Co. v. Stutzman,* 46 S.W.3d 829 (Tex. 2000).............................. 6

*Carter v. Abbyad*, 299 S.W.3d 892 (Tex. App.—Austin 2009, no pet.) ........ 6

*Greater Houston Transp. Co. v. Phillips,*
801 S.W.2d 523 (Tex. 1990)..................................................... 6, 15

*In re Martin*, 147 S.W.3d 453
(Tex. App.— Beaumont 2003, pet. denied)................................................... 7

*McCullough v. Godwin*,
214 S.W.3d 793 (Tex. App.—Tyler 2007, no pet.)...................................... 7

*St. Joseph Hosp. v. Wolff,* 94 S.W.3d 513 (Tex. 2002) ................................. 9

*Scurlock v. Pennell*, 177 S.W.3d 222
(Tex. App.—Houston [1st Dist.] 2005, no pet.) ............................................ 10

*Bicknell v. Lloyd*, 635 S.W.2d 150
(Tex. App.—Houston [1st Dist.] 1982, no writ)............................................ 13

## STATUTES & RULES

TEX. R. CIV. P. 166a(c) ....................................................................................4

Tex. Fam. Code § 41.001 ................................................................................. 6

Tex. Fam. Code § 101.001 ................................................................................ 7

## TREATISES

2 Restatement of Torts 2d, § 316 (1965) ........................................................ 8

2 Restatement of Torts 2d, § 302 (1965) ........................................................12

## STATEMENT OF THE CASE

This case arises out of damages caused by a fire allegedly started by a minor child, ███████████ who was allegedly accompanied by another minor child, ███████████ The fire spread from to the Don and Carol Titel's (the Appellants) real property allegedly causing damages to their property. The Appellants sued:

1. Mandy Edwards (███████████ mother);

2. Jeremy Melchor (███████████ father); and

3. The Appellees, Morris and Lisa Melchor (owners of the real property on which Jeremy Melchor and Mandy Edwards resided. Morris and Lisa Melchor are the parents of Jeremy Melchor and the grandparents of ███████████

Appellants' Third Amended Petition[1] complains generally that Appellees were negligent because (1) they failed to control the individuals on the property and (2) allowed their adult son, Jeremy, to possess the land and live there with his children which created a dangerous situation.

The trial court granted Appellees' traditional motion for summary judgment[2] which argued that Appellees do not owe a duty to Appellants as a matter of law.

Appellants now challenge the trial court's order granting summary judgment as to Appellees.

---

[1] Appellants Third Amended Petition was filed in response to Defendants Motion for Summary Judgment and was the live pleading at the time the Motion for Summary Judgment was gratned.

[2] Appellees and Jeremy Melchor all moved for summary judgment. Jeremy Melchor's motion was denied while Appellees' motion was granted.

# ISSUES PRESENTED[3]

## Issue No. 1

Did the Appellees have a duty to control the actions of minor children who were not in their legal custody or actual care?

## Issue No. 2

Did the Appellees have a duty to control Mandy Edwards' and/or Jeremy Melchor's supervision or discipline of their minor children?

## Issue No. 3

Does Texas acknowledge a claim for negligent entrustment of real property?

## Issue No. 4

Does Section 302 of the Restatement of Torts (Second) provide an independent basis for establishing a duty of care when other law specifically denies the duty?

---

[3] Appellants' brief identifies the following issue for this courts consideration: "Grant of Summary Judgment was Improper." Appellees have attempted to characterize Appellants arguments against summary judgment as "issues" herein.

## STATEMENT OF THE FACTS

Appellees, Morris and Lisa Melchor are the owners of rural property located at 693 Pickett Lane, Liberty Hill, Texas (the "Property").[4] The property is improved by a home.[5] At all relevant times the Property and home were generally occupied and under the control of Jeremy Melchor, Appellees' adult son. Appellees do not live on the Property and it is uncontested that their son Jeremy Melchor was given full control of the Property.[6]

The summary judgment evidence in this case is clear – on July 11, 2011, ███████████ started the fire in question at a time when he was being supervised by his mother, Mandy Edwards.[7] On the day in question, Mandy Edwards, Jeremy Melchor's girlfriend, was staying in the home and caring for the children while Jeremy was at work at Smokey Mo's BBQ.[8] After the fire, █████████ admitted to his mother that he had learned to start fires in Boy Scouts and had started the fire in question.[9] Appellants contend that the fire marshal report is

---

[4] *See* Plaintiffs' Third Amended Petition at p.1-2 (CR 56-57).
[5] *See* Appellees Brief at p. 6-7.
[6] *See* Plaintiffs' Third Amended Petition at p. 2 (CR 57) (stating that the property was turned over to Jeremy Melchor); *See also* Appellants Brief at p. 8 (stating that Jeremy Melchor had been given "all authority to control the conditions on [Appellees] property").
[7] *See* Exhibit B to Defendants' Motion for Summary Judgment, Oral Depo. of Mandy Edwards, at pp. 18 & 34 (CR 42 & 44).
[8] *See id*. at p. 18 (CR 42); *see also* Exhibit A to Defendants' Motion for Summary Judgment, Oral Depo. of Jeremy Melchor, at p. 30 (CR 32).
[9] *See* Mandy Edwards Depo. at pp. 34 & 37 (CR 44-45).

evidence that ███████ also started the fire in question.[10] However, the report confirms that ██ started the fire. Deputy Fire Marshal Daniel Berger's report states that "██ stated he picked up some grass, lit it with the lighter, and then placed it on the ground.[11] The fire quickly grew in size and the kids were unable to extinguish it."[12] According to the report, ██ claimed that he and ██████ had lit grass on fire earlier, and that they had "put it out by stomping on it."[13] Yet, there is no evidence, nor do Appellants claim, that this earlier fire is responsible for destroying their property.[14] Instead, the report indicates that it is the second fire, the fire ██████████ admits he started, which grew out of control.[15] The only reference to ███████'s potential involvement found in the report is a statement that ██ told Deputy Berger that ██████ told him to start a fire.[16]

Accordingly, the evidence is clear that ██████████ actually started the fire. At the time of the incident in question, ██████████ permanently resided with his biological father in Alabama and was temporarily visiting his mother.[17]

---

[10] *See* Plaintiffs' Response to Defendants' Motion for Summary Judgment at p. 2 (SCR 6).
[11] *See* "Plaintiffs' Response to Defendants' Motion for Summary Judgment" 8th unmarked Exhibit at 12 (CR 32).
[12] *Id.*
[13] *Id.*
[14] *Id.*
[15] *Id.*
[16] *Id.*
[17] Exhibit A to Defendants' Motion for Summary Judgment, Oral Depo. of Jeremy Melchor, at p. 9, 15-16 (CR 26-27).

Neither ███████████ nor Mandy Edwards are related by blood or marriage to Appellees.[18]  Furthermore, the summary judgment evidence indicates that Jeremy Melchor never took responsibility for disciplining or supervising ███████████[19]

███████████ was in Jeremy Melchor's legal custody and living permanently on the Property under the care of her father.[20]  However, like ███, ███████████ was under the actual care of Mandy Edwards at the time of the incident in question.[21]  It is undisputed that Appellees were not at the Property on July 11, 2011 or leading up to the events in question and were not charged with the care of the children at the time.[22]

## SUMMARY OF THE ARGUMENT

The function of a summary judgment is to eliminate patently unmeritorious claims and defenses, not to deprive litigants of the right to a jury trial.  *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 n. 5 (Tex. 1979).  A trial court's order granting a traditional motion for summary judgment is subject to *de novo* review.  *Joe v. Two Thirty-Nine Joint Venture,* 145 S.W.3d 150, 156 (Tex. 2004).  The traditional summary judgment movant has the burden of showing that no genuine issue of material fact exists, and that it is entitled to judgment as a

---

[18] *See id.*; *see also* Mandy Edwards Depo. at pp. 8 & 19(CR 39 & 43).
[19] *See* Jeremy Melchor Depo. at pp. 16, 22, 23 (CR 27-29).
[20] *See id.* at pp. 13-14 (CR 24-25).
[21] *See* Mandy Edwards Depo at p. 18 (CR 42).
[22] *See* Third Amended Petition at pp. 2-3 (CR 57); *see also* Mandy Edwards Depo. at p. 16 (CR 40)

matter of law. Tᴇx R. Cɪᴠ. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 548 (Tex. 1985). As defendants, the Melchors are entitled to summary judgment if they conclusively negated an essential element of Appellants' negligence cause of action. *S. W. Elec. Power Co. v. Grant,* 73 S.W.3d 211, 215 (Tex. 2002).

The Melchors sought a traditional summary judgment arguing that they owed no duty of care to their neighbors as a matter of law based on the facts as pled. A negligence cause of action requires a legal duty owed by one person to another, a breach of that duty, and damages proximately caused by the breach. *D. Houston, Inc. v. Love*, 92 S.W.3d 450, 454 (Tex. 2002) (citing *El Chico Corp. v. Poole*, 732 S.W.2d 306, 311 (Tex. 1987)). Duty, the threshold inquiry in any negligence case, is a question of law. *Chon Tri v. J.T.T.*, 162 S.W.3d 552, 563 (Tex. 2005); *Poole*, 732 S.W.2d at 311. A duty is a legal obligation that requires the defendant to conform to a certain standard of conduct. *See Way v. Boy Scouts of Am.*, 856 S.W.2d 230, 233 (Tex. App.—Dallas 1993, writ denied).

First the Appellants claim that the Melchors were negligent by failing to control the various individuals on their property. Because the law generally does not impose a duty to control the acts of another person to prevent harm to third parties absent certain special relationships or circumstances (and no such relationships or circumstances are present), the Melchors do not owe Appellees a

duty to control ▬▬▬▬▬ ▬▬▬▬▬▬ Mandy Edwards or Jeremy Melchor.

Next, Appellants claim that the Melchors were negligent in "creating a dangerous situation." In support of this claim the Appellants generally allege that a dangerous situation was created when Appellants entrusted the Property to Jeremy Melchor because Jeremy Melchor had children. However, Texas has not extended claims for negligent entrustment to include entrustment of real property. Negligent entrustment only applies to chattels. Because Appellants only factual allegation is that the Property was negligently entrusted to Jeremy Melchor, the facts do not support a finding of a duty. Finally, Section 302 of the Second Restatement of Torts, upon which Appellants heavily rely, does not apply to the determination of a duty and has only been cited in one Texas case that involved significantly different facts than the case before the court. Section 302 and its companion sections 302A and 303B characterizes certain conduct that involves an unreasonable risk of harm as negligent conduct. However, using Section 302 as a front, Appellants would have the Court apply a very broad duty to landowners who allow children (or whose invitees allow children) on their property, because according to the arguments of Appellants, children are by nature uncontrollable by their parents and it is foreseeable that all children will start fires that damage third party properties.

Because no duty exists as a matter of law, the Court should affirm the trial court's summary judgment in favor of Appellees.

## ARGUMENT AND AUTHORITIES ON ALL ISSUES

**A.**   **Appellees do not owe a duty to third parties to control the actions of minor children who are not in their legal custody or actual care.**

Appellants contend in their Third Amended Petition that Appellees negligently exercised control over their invitees and persons permitted to visit and stay upon the premises.  However, Texas law does not impose a duty to control the actions of invitees.  Rather, Texas law generally imposes no duty to control the acts of another person to prevent harm to third parties absent certain special relationships or circumstances. *Providence Health Ctr. v. Dowell*, 262 S.W.3d 324, 331 (Tex. 2008); *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 837 (Tex. 2000); *Carter v. Abbyad*, 299 S.W.3d 892, 895 (Tex. App.—Austin 2009, no pet.). Examples of relationships that have been recognized as giving rise to a duty to control include employer/employee, parent/child, and independent contractor/contractee.  *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990).  The relationship between an owner of real property and their tenants, invitees, and/or their tenant's invitees have not been recognized in Texas as one of these special relationships; nor should they be.

TEXAS FAMILY CODE § 41.001 states that  a parent or other person who has the duty of control and reasonable discipline of a child is liable for the negligent

conduct of the child if the conduct is reasonably attributable to the negligent failure of the parent. *See* TEX. FAM. CODE § 41.001. Furthermore, the Family Code provides detailed definitions construing the parent child relationship. *See* TEX. FAM. CODE § 101.001, *et seq*. The law does not favor shifting the duties imposed by the Family Code from the parent to a non-parent absent unique circumstances, such as when the parent is absent and/or the non-parent has assumed custodial responsibilities. *In re Martin*, 147 S.W.3d 453, 456 (Tex. App.— Beaumont 2003, pet. denied); *McCullough v. Godwin*, 214 S.W.3d 793, 808 (Tex. App.—Tyler 2007, no pet.)[23]. In this particular instance, the summary judgment evidence in this case is clear – ███████████ started the fire in question at a time when he was being supervised by his mother, Mandy Edwards. Even if the Court were to determine that there is some evidence that ███████████ started the fire in question, ███████████ is not the child of Appellees nor had she been placed in their custodial care. Therefore, the duty to control the minor children at issue should not shift to Appellees. *See id*. Counsel for Appellees is aware of no Texas case that holds that mere ownership of the property upon which a child resides subjects a non-parent owner to custodial responsibility for a child. Such a holding would have unthinkable consequences to property owners across the state.

---

[23] The uncontroverted evidence is that Mandy Edwards assumed custodial care of the children in question the day of the fire.

Accordingly, Appellees do not have a duty to control the actions of ███████████ nor ████████████.

**B.  Did the Appellees have a duty to control Mandy Edwards' and/or Jeremy Melchor's supervision or discipline of their minor children?**

Appellants assert that Appellees "negligently failed to monitor and control the actions of their invitees."  To the extent this statement is referring to Jeremy Melchor or Mandy Edwards, Appellees do not have a duty (or a right) to control the manner in which Jeremy Melchor and Mandy Edwards – two adults – parent their children.   Again, Texas law generally imposes no duty to control the acts of another person to prevent harm to third parties absent certain special relationships or circumstances. *Providence Health Ctr.*, 262 S.W.3d at 331; *Torrington*, 46 S.W.3d at 837; *Carter*, 299 S.W.3d at 895.  While the parent-child relationship does place a duty on a parent to control a child, that duty only relates to minor children.  *See, e.g.,* Restatement (Second) of Torts § 316 (1965) (stating that "[a] parent is under a duty to exercise reasonable care so to control his *minor* child" (emphasis added).)  No special relationship or circumstance exists that confers a duty on Appellees to control either of the adults in question.  In an apparent attempt to create a duty where none exists, Appellants assert that Jeremy Melchor is an agent of, or in a joint enterprise with, Morris and Lisa Melchor for the purpose of raising children.  Appellants argue that Jeremy is permitted to live on

the property for the purpose of providing a stable home and wholesome environment for the Melchors' grandchildren, and that this creates an agency or joint enterprise relationship for that purpose. Appellants make this argument without citing any case that extends agency or joint enterprise liability to the act of child rearing.

First, Jeremy, can not be the Melchors' agent for raising or supervising the children because the Melchors' do not have the duty to raise or supervise the children in the first place. *See* discussion *supra* Part A. Secondly, the Melchors can not be in a joint enterprise with Jeremy for the purpose of raising children because a joint enterprise can not exist without an equal right to voice in the direction of the enterprise (in this case providing care/supervision for children). *See St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 530 (Tex. 2002) (listing the elements of joint enterprise). Appellants do not contend that the Melchors had (and they did not have) legal or actual custody of any of the children at issue. Therefore, they do not have an equal right to voice in the direction of parenting decisions. Accordingly, no joint enterprise to parent the children can exist. Therefore, it follows that Appellees do not owe Appellants a duty to control Jeremy Melchor or Mandy Edwards' parenting decisions and can not be liable for Jeremy Melchor's or Mandy Edwards' alleged parenting failures under joint enterprise or agency theories.

**C.** **Texas does not Recognize a Claim for Negligent Entrustment of Real Property.**

Appellants' Third Amended Petition alleges that Appellees were negligent by "acquiring land in an area at high risk for wildfire and ***turning it over to their 'never do well' adult son, who in turn allowed young children to enter***, reside, and wander unsupervised upon their land."[24]   Therefore, Appellants' primary complaint is that Appellees negligently entrusted the Property to Jeremy Melchor. However, no court in Texas has recognized a claim for negligent entrustment of real property.

"Negligent entrustment in Texas applies only to chattels; Texas courts have not extended the concept to include the entrustment of real property." *Scurlock v. Pennell*, 177 S.W.3d 222, 226 (Tex. App.—Houston [1st Dist.] 2005, no pet.).  A trial court's granting of summary judgment on a claim for negligent entrustment of real property is proper. *See id.* at 227.

Appellants' brief requests the court to allow Appellants to maintain a cause of action against Appellees because "negligence may lie in the creation of a dangerous situation, although the final injury is activated by the conduct of a third person."[25]   Assuming this principle were to be applied in this case, the first question should be "what conduct do Appellants allege created the dangerous

---

[24] *See* Third Amended Petition at pp. 2-3 (CR 57) (emphasis added).
[25] See Appellants' Brief at pp. 19-20.

situation." While Appellees' brief spends considerable amount of time concerning Jeremy's conduct and various children's conduct, the only indentified conduct of Appellees (other than the failure to control the previously discussed adults and children) is:

> Appellees were aware that more than their own grandchildren were being invited out to their land, but chose to exercise no oversight control, *other than to delegate to their son all authority to control conditions on their property*.[26]

Accordingly, Appellants merely allege that Appellees should not have entrusted the property to Jeremy. In *Scurlock v. Pennell* a vacation home owner's property caught on fire when an unknown third party broke into the uninhabited vacation home. *See* 177 S.W.3d 222, 223 (Tex. App.—Houston [1st Dist.] 2005, no pet.). Fire spread to the plaintiff's neighboring property causing damages. *See id.* The neighbor sued the homeowner claiming (1) that the absent property owner negligently left the home unlocked and the utilities on, thereby inviting vagrants, and (2) that the absent home owner negligently entrusted the home to a third party who started the fire. *See id.* at 223-224. With respect to the first factual claim, the court held that the property owner did not owe a duty to their neighbor to prevent unknown criminals from breaking into the house and starting fires because the event was unforeseeable. *See id.* at 223-225. With respect to the second claim, the

---

[26] *See* Appellants' Brief at p. 8 (emphasis added).

court summarily held that negligent entrustment only applies to chattels and not real property. *See id.* at 226.

The real factual complaint in Appellants' Third Amended Petition concerns third parties' (the two adults and children) behavior not a condition of the property. The only activity Appellees are alleged to have engaged in is allowing Jeremy Melchor and his children to reside on the property. Therefore, the only alleged conduct associated with the creation of "a dangerous situation," is Appellees entrustment of the property to Jeremy Melchor, who had children. Since negligent entrustment only applies to chattels, Appellees do not owe the Appellants a duty regarding the entrustment of Appellees real property.

**D.** **Section 302 of the Restatement of Torts (Second) does not provide an independent basis for establishing a duty of care because other law specifically denies a duty under the facts as pled and Section 302 not concerned with duty?**

Appellants argue that "Restatement of Torts (Second), Section 302, et seq., provides a basis for liability on facts like the one in this case."[27] However, the question in this case is limited to whether or not the Appellants owed a duty of care to the Appellees not to entrust property to Jeremy Melchor.

Restatement of Torts (Second), Section 302, et seq. characterizes certain conduct that involves an unreasonable risk of harm as negligent conduct. *See* 2 Restatement of Torts 2d, § 302, et seq. (1965). However, the first comment to

---

[27] Appellants' Brief at p. 13.

Section 302 is quite clear with respect to the sections use for purpose of establishing a duty:

> This Section is concerned only with the negligent character of the actor's conduct, and ***not with his duty to avoid the unreasonable risk***. . . The duties of one who merely omits to act are more restricted, and in general are confined to situations where there is a special relation between the actor and the other which gives rise to the duty. . . If the actor is under no duty to the other to act, his failure to do so may be negligent conduct within the rule stated in this Section, ***but it does not subject him to liability, because of the absence of duty***.

Restatement 2d of Torts § 302, comment a (emphasis added). Furthermore, the one case in the history of Texas jurisprudence that mentions this section of the Restatement addressed significantly different facts and did not recognize a duty similar to the duty Appellants request this Court to recognize. In *Bicknell v. Lloyd*, 635 S.W.2d 150 (Tex. App.—Houston [1st Dist.] 1982, no writ), which Appellants cite in support of their arguments, a minor child was injured when another minor child misappropriated a three wheeled motorized cart from the Defendant. *See id*. at 151. In that case, the Defendant admitted that at the time the cart was stolen by children he had full control and responsibility for the cart. *See id*. at 152. On several occasions prior to the incident in that case, children had stolen the car from the Defendant when Defendant had left the key in the ignition. *See id*. Additionally, the cart was similar to an attractive nuisance in that children would crowd around the cart or climb on the cart when in use. *See id*. The Plaintiff and a third party testified that Defendant continued to leave the key in the ignition and

left they key in the ignition when the injury occurred. *See id.* The court held that it was proper for a jury to consider the Defendant's negligence and reasoned that:

> [a] party may be held responsible for a negligent omission which involves an unreasonable risk of harm to another through the foreseeable action of a third person. Restatement (Second) of Torts § 302, comment j (1965). Thus, even though an injury is the result of the unauthorized action of a third party**, *the party in possession or control* may be liable *if the character of the property is such that it "affords a peculiar temptation or opportunity for intentional interference likely to cause harm."*** Restatement (Second) of Torts § 302B, comment e, section G, illustration 14 (1965).
>
> *See id.* (emphasis added).

The facts before this Court are very different. In this case the "property" at issue (raw land) is not "such that it affords a peculiar temptation." Additionally, and importantly, the Defendant in the *Bicknell* case was <u>not</u> the owner of the cart. *See id.* At trial, the Defendant testified that his stepdaughter was the owner of the cart yet he was in possession and control of the cart. *See id.* Accordingly, the person who was actively controlling the cart at the time of the incident was sued and not the *owner* of the cart. Therefore, Appellants are requesting this Court to extend the application of Section 302 well beyond its express intended application and well beyond *Bicknell's* application in order to create a duty in direct conflict with well established legal principles.

Appellants argue that the fire was foreseeable, based on an odd assertion: "That children *will* play with fire is a matter of common human knowledge."[28] However, Appellants provide no legal basis for this claim. Instead Appellants would have the Court characterize any landlord's lack of knowledge as to a tenant's guests as "willful ignorance." See *id*. at 7. No basis for such an assertion exists in Texas law.

The Appellants have furthermore failed to plead any fact or present any evidence that Morris and Lisa Melchor should have known that the children under the care of adults on the property would go unsupervised, play with fire, and cause harm to a neighboring property. Such unforeseeable conduct is similar to the conduct addressed by the Texas Supreme Court in *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523 (Tex. 1990). In that case, the Court found a taxicab company not liable for the conduct of its employee who caused grievous harm to a third party. 801 S.W.2d 523, 526 (Tex. 1990). The plaintiff in that case asserted that the taxicab company had a duty to control the actions of its employee. *Id*. Further, the plaintiffs asserted that the taxicab company was negligent in creating a situation that presented an unreasonable risk of harm by failing to instruct its employee not to engage in dangerous activity, namely carrying a gun. *Id*. However, because no similar incident had occurred previously, the Court held that

---

[28] *See* "Plaintiffs' Response to Defendants' Motion for Summary Judgment" at 6 (emphasis added) (SCR 5).

the employee's actions were not foreseeable as a matter of law, and no duty to the motorist to warn the company's drivers not to engage in dangerous activity. *Id.* The Court elaborated: "To hold that Yellow Cab created a dangerous situation by failing to admonish its drivers not to carry guns is an unwarranted expansion" of exceptions to the general rule that a person has no duty to control the conduct of third persons. *Id.*

Instead of relying on well-settled law from binding authority, Appellants would have the Court impose an absurd duty of care on the Appellees based on the bizarre and unsupported assertion that it was entirely foreseeable that children from the big city brought to such a rural setting, and allowed to roam at will unsupervised upon thickly wooded and brush-covered land, would at some point likely play with fire and cause grievous harm. The law should not impose a duty on Appellees to direct parents on how to instruct or monitor their children. Furthermore, Appellants' only claim as to what Appellees did or failed to do is entrust real property to Jeremy Melchor. Such allegation does not support a claim for negligence and no duty exists.

Because negligent entrustment claims are limited to chattels and Section 302 of the Restatement is inapplicable to the issues and facts before the Court, Appellees do not owe a duty to Appellants not to "create a dangerous situation" when the action in question is merely entrusting property to an adult with children.

## CONCLUSION AND PRAYER

The factual allegations in Appellants' Third Amended Petition only raise negligence claims based on Appellees alleged failure to control children that are not in the legal or actual custody and/or failure to control adult third parties without any special relationship with Appellees. Because the law does not impose a duty to control such third parties for the protection of Appellees, summary judgment was proper. Furthermore, Texas has not extended negligent entrustment claims beyond chattels. Therefore, no duty exists to Appellants. Finally, Restatement of Torts Section 302 does not alter other legal principles or support the creation of a new duty. Wherefore, Appellees Morris and Lisa Melchor respectfully pray that this Court affirm the trial court's Summary Judgment.

Respectfully submitted,

NAMAN, HOWELL, SMITH & LEE, PLLC
8310 N. Capital of Texas Highway,
Suite 490
Austin, Texas 78731
(512) 474-1901
FAX (512) 474-1901


By: ___/s/ Jay P. Lea_____
    Jay P. Lea
    State Bar No. 24065923
    jlea@namanhowell.com

ATTORNEYS FOR APPELLEES

## CERTIFICATE OF COMPLIANCE

Pursuant to TEX. R. APP. P. 9.4(i), I hereby certify that the foregoing Brief of Appellee was computer-generated using Microsoft Word for Windows (2007). According to the word-count function of that program, this Brief of Appellee contains 4,206 words, excluding any portions of this Brief exempted by TEX. R. APP. P. 9.4(i)(1).

        __/s/ Jay P. Lea_____
        Jay P. Lea


## CERTIFICATE OF SERVICE

Pursuant to TEX. R. APP. P. 9.5, I hereby certify that a true and correct copy of the foregoing Brief of Appellee was served via facsimile and via e-service to following counsel on this 10th day of April, 2015.

Paul C. Velte, IV
109 E. Hopkins St.
Suite 204
San Marcos, Texas 78666
**Facsimile (512) 476-9504**
**Velte@PTexans.com**

        __/s/ Jay P. Lea_____
        Jay P. Lea


### Appendix

1. Plaintiffs' Third Amended Petition
2. Appellants Motion for Summary Judgment

No. C1-CV-12-008224

| DON TITEL<br>CAROL TITEL<br>Plaintiffs | § | IN THE COUNTY COURT |
|---|---|---|
| v. | § | AT LAW #2 |
| JEREMY DAVID MELCHOR,<br>MORRIS G. MELCHOR,<br>LISA MELCHOR,<br>MANDY EDWARDS<br>Defendants | § | TRAVIS COUNTY, TEXAS |

## THIRD AMENDED PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

Comes now Plaintiffs to make this complaint of the actions of Defendants and their children, for damages caused when one or more of Defendants' children intentionally or negligently started a fire when a burn ban was in effect on July 11, 2011. For causes of action, Plaintiffs would show the Court:

### I. Parties & Venue

Plaintiffs are individuals. This cause of action arose in Travis County. Defendant Jeremy Melchor is an individual, who resides in Travis County, Texas, and is already a party to this suit.

Defendant Mandy Edwards is an individual residing in Travis County, who may be served with citation at 693 Pickett Ln., Liberty Hill, TX 78642, or where-ever he or she may be found.

Defendants Morris and Lisa Melchor are individuals who have answered this suit.



000814761

### II. Discovery Level

Plaintiffs believe discovery should proceed under Rule 190.3 (level II). Plaintiffs seek monetary relief in an amount between $200,000.00 and $250,000.00, and within the jurisdictional limits of this court.



## III. Cause of Action: Negligence

### A. *By parents or those with parental authority.*

On or about July 11, 2011, children of two Defendants, Jeremy Melchor and Mandy Edwards, negligently or intentionally set a fire to grass, at a time of extreme drought and dry conditions throughout the State of Texas. This fire quickly raged out of control and consumed a large swath of trees as it moved toward Plaintiff's residence. Plaintiffs believe the children were poorly supervised by adults and Defendants were negligent in providing supervision, and also for allowing the children to possess a cigarette lighter used to start said fire. Defendants had the duty of control and reasonable discipline of these children and are vicariously liable under Chapter 41, Texas Family Code.

They are also liable for their own negligence as the possessors of land by failing to do anything a reasonable person would do in possession of highly combustible land in its natural (and drought-stricken) state to prevent a wildfire intentionally or negligently set by children they invited and allowed to roam unsupervised upon the premises and surrounding lands, as in this case, where children were allowed to go unsupervised with a cigarette lighter in hand. They owed a duty to surrounding property owners to take reasonable steps to prevent any type of fire during a time when a county burn ban was in effect. By violating a county ordinance designed to prevent the very type of harm that Defendants' negligence caused, such constitutes negligence per se.

### B. *By landowners.*

Defendants Morris and Lisa Melchor, (hereafter "Senior Melchors") as the owners of the property, negligently created a recipe for disaster by acquiring land in an area at high risk for wildfire and turning it over to their 'never do well' adult son, who in turn allowed young children

2



to enter, reside, and wander unsupervised upon their land, and neighboring heavily wooded property as well. Said defendants negligently exercised control over their land and over their invitees and persons permitted to visit and stay upon their premises. Defendants negligently failed to monitor and control the activities of their invitees while upon the Defendant's land, which activities caused grievous harm to Plaintiffs. They failed to do anything a reasonable owner would do in possession of highly combustible land in its natural (and drought-stricken) state to prevent a wildfire intentionally or negligently set by children knowingly invited upon the premises.

At all material times, Defendant Jeremy Melchor was acting as the agent of the Senior Melchors, in his role as manager of his parent's premises, or they were working together in a joint enterprise for the purposes of providing a good home for three children residing there, and to fix up the home and property, for its eventual resale.

## PRAYER

The Plaintiffs pray that this cause be tried by jury, and that final judgment be given for their actual damages, in addition to any such other relief, both in law and in equity, to which Plaintiffs may prove themselves justly entitled.

Respectfully Submitted,

Paul C. Velte IV
109 E. Hopkins St., Suite 204
San Marcos, TX 78666
512-353-2299 (San Marcos)
Fax 512-476-9504
Email: velte@ptexans.com
Bar #20541700
ATTORNEY FOR PLAINTIFFS

3

## CERTIFICATE OF SERVICE

I certify that I have served a copy of this document upon all counsel of record on October 22, 2013.

Paul C. Velte IV

4

59

CAUSE NO. C-1-CV-12-008224

| | | |
|---|---|---|
| DON TITEL & | § | IN THE COUNTY COURT |
| CAROL TITEL, | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| v. | § | |
| | § | AT LAW NO. 2 |
| | § | |
| JEREMY DAVID MELCHOR, | § | |
| MORRIS G. MELCHOR, | § | |
| LISA MELCHOR and | § | |
| MANDY EDWARDS, | § | |
| | § | |
| **Defendants.** | § | TRAVIS COUNTY, TEXAS |

## DEFENDANTS JEREMY DAVID MELCHOR, MORRIS G. MELCHOR AND LISA MELCHOR'S MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Defendants, JEREMY DAVID MELCHOR, MORRIS G. MELCHOR and LISA MELCHOR, filing this Motion for Summary Judgment, and in support thereof, would respectfully show unto the Court the following:

### INTRODUCTION

1.      Plaintiffs have brought this lawsuit claiming they suffered harm as a result of a fire that originated on neighboring property owned by Defendants Morris and Lisa Melchor. Plaintiffs' First Amended Petition Section III, ¶ 1, 2.

2.      Plaintiffs claim that Defendant Jeremy Melchor negligently exercised a duty of control and reasonable discipline over a child, who set fire to grass on the property owned by Defendants Morris and Lisa Melchor, and the fire spread to property owned by Plaintiffs. Plaintiffs allege that Chapter



41 of the Texas Family Code provides the basis for Defendant Jeremy Melchor's duty of care. *Id.* Section III, ¶ 1.

3. Plaintiffs further claim that Defendants Morris and Lisa Melchor, as owners of the property, negligently exercised control over persons allowed to visit and stay on their property. *Id.* Section III, ¶ 2.

## SUMMARY JUDGMENT STANDARD

4. To prevail on a motion for summary judgment, a party must conclusively establish the absence of any genuine question of material fact and that he is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c).

5. A defendant who conclusively negates at least one of the essential elements of a cause of action is entitled to summary judgment as to that cause of action. *Randall's Food Markets, Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex.1995); *Wornick Co. v. Casas*, 856 S.W.2d 732, 733 (Tex. 1993). All doubts about the existence of a genuine issue of material fact are resolved against the movant. *Randall's*, 891 S.W.2d at 644; *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41, 47 (Tex.1965).

## SUMMARY JUDGMENT EVIDENCE

6. To support the facts in this motion, Defendants include the following summary judgment evidence in an appendix filed with this motion and incorporates the evidence into this motion by reference.

Exhibit A: Selected Excerpts of the Videotaped Oral Deposition of Defendant Jeremy David Melchor;

Exhibit B: Selected Excerpts of the Videotaped Oral Deposition of Defendant Mandy

Edwards; and

Exhibit C: Selected Excerpts of the Oral Deposition of Donald Lee Titel.

## SUMMARY JUDGMENT FACTS

7.  Jeremy Melcher resides at 693 Pickett Lane in Liberty Hill, Texas along with his girlfriend, Mandy Edwards. Exhibit "A," Melchor Dep. 13:24-14:4; Exhibit "B," Edwards Dep. 18:23-19:4. Jeremy is a tenant on the property, occupying pursuant to an oral lease with his father Morris Melchor and stepmother Lisa Melchor, who own the property at 693 Pickett Lane. Exhibit "A," Melchor Dep. 7:14-8:6.

8.  Mandy Edwards is mother to two minor children, ███████ and ███████ from previous relationships. Exhibit "A," Melchor Dep. 14:19-15:10.

9.  ███████ resides in Alabama with his father. Exhibit "A," Melchor Dep. 16:16; Exhibit "B," Edwards Dep. at 8:15-20.

10. ███████ does not reside, and never has resided, at 693 Pickett Lane. Exhibit "B," Edwards Dep. at 7:25-8:20; Exhibit "A," Melchor Dep. 16:2-12. Jeremy Melcher is not ███ ███████ parent or guardian, nor does he exercise any parental control or discipline over ███ ███████ Exhibit "A," Melchor Dep. 22:8-24:1.

11. In July of 2011 ███████ was in Liberty Hill, Texas visiting his mother and staying with her at 693 Pickett Lane. Exhibit "B," Edwards Dep. 16:1-5. On the morning of July 11, 2011, ███████ started a fire in a grassy area near or around the house at 693 Pickett Lane. *Id.* at 37:1-18. The fire spread to neighboring property owned by Plaintiffs, allegedly causing property damage. Exhibit "A," Melchor Dep. 31:18-20; Exhibit "C," Titel Dep. 39:23-43:17

12. On the evening of July 11, 2011, ███████ told his mother that he had started the fire.

13

Exhibit "B," Edwards Dep. 34:8-23, 37:1-18.

13.     Mandy Edwards, ████████████ mother, was present at 693 Pickett Lane when the fire started. Exhibit "A," Melchor Dep. 28:8-19, 30:18-23; Exhibit "B," Edwards Dep. 39:1-17.   No other adult, including Defendants Jeremy Melchor, Morris Melchor and Lisa Melchor, were present at 693 Pickett Lane or exercising any parental control over ████████ when the fire started. Exhibit "A," Melchor Dep. 28:8-19, 30:18-23; Exhibit "B," Edwards Dep. 39:1-17.

## ARGUMENT & AUTHORITIES

### A. Defendant Jeremy Melchor is entitled to Summary Judgment because he did not owe any duty under the Texas Family Code to exercise control over ████████.

14.     Defendant Jeremy Melchor is entitled to judgment as a matter of law because the uncontradicted summary judgment evidence establishes that there is no genuine issue of material fact regarding the following element(s) of the Plaintiff's cause of action.   To establish tort liability a plaintiff must initially prove the existence and breach of a duty owed to him by defendant. *Otis Engineering Corp v. Clark*, 668 S.W.2d 307, 309 (Tex.1983).   In the present case the existence of a duty simply does not exist.

15.     Texas law generally imposes no duty to control the acts of another person to prevent harm to third parties absent certain special relationships or circumstances. *Providence Health Ctr. v. Dowell*, 262 S.W.3d 324, 331 (Tex. 2008); *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 837 (Tex. 2000); *Carter v. Abbyad*, 299 S.W.3d 892, 895 (Tex. App. Austin 2009).   The parent/child relationship is one exception to this general rule. *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990); TEX. FAM. CODE ANN. §§ 41.001(1), 151.001(d).

16. Under the Texas Family Code, a parent or other person "who has the duty of control and reasonable discipline of a child" may be held liable for property damage caused by the negligent conduct of the child that is reasonably attributable to the negligent failure of the parent or other person to exercise that duty. TEX. FAM. CODE ANN. § 41.001(1).

17. There is no basis under Texas law for imposing this duty of control and discipline on an unrelated third-person who has not voluntarily assumed any parental rights or obligations over the child. *See Coons-Andersen v. Andersen*, 104 S.W.3d 630, 635 (Tex. App.--Dallas 2003, no pet.); *Cunningham v. Ansorena-Cunningham*, 2009 WL 2902718 *6-7 (Tex. App. Austin Aug. 26, 2009). In fact, the law does not favor shifting the duties imposed by the Family Code from the parent to a non-parent absent unique circumstances not present in the case at hand. *See, e. g.*, TEX. FAM. CODE ANN. § 151.001(d); *In re Martin*, 147 S.W.3d 453, 456 (Tex. App.--Beaumont 2003, pet. denied); *McCullough v. Godwin*, 214 S.W.3d 793, 808 (Tex. App.—Tyler 2007, no pet.).

18. In the alternative, if Jeremy Melchor did have a duty under the Texas Family Code, he did not breach that duty because the fire was not foreseeable. *See Timberwalk Apartments, Partners, Inc. v. Cain*, 972 S.W.2d 749, 756 (Tex. 1998); *Mellon Mortg. Co. v. Holder*, 5 S.W.3d 654, 655 (Tex. 1999).

   **B. Defendants Morris and Lisa Melchor are entitled to Summary Judgment because they did not owe any duty to Plaintiff to prevent the damages under the circumstances.**

19. Defendants Morris and Lisa Melchor are entitled to judgment as a matter of law because the uncontradicted summary judgment evidence establishes that there is no genuine issue of material fact regarding the following element(s) of the Plaintiff's cause of action. To establish tort liability a plaintiff must initially prove the existence and breach of a duty owed to him by defendant. *Otis*

*Engineering Cor*, 668 S.W.2d at 309. In the present case the existence of a duty simply does not exist.

20.     Texas law generally imposes no duty to control the acts of another person to prevent harm to third parties absent certain special relationships or circumstances. *Providence Health Ctr.*, 262 S.W.3d at 331; *Torrington*, 46 S.W.3d at 837; *Carter*, 299 S.W.3d at 895. Examples of relationships that have been recognized as giving rise to a duty to control include employer/employee, parent/child, and independent contractor/contractee. *Greater Houston Transp. Co*, 801 S.W.2d at 525.

21.     There is no basis under Texas law for imposing a duty on landowners to control the conduct of unknown third-persons on their property.

22.     In the alternative, if Morris and Lisa Melchor did have a duty, they did not breach that duty because the fire was not foreseeable. *See Timberwalk*, 972 S.W.2d at 756; *Mellon*, 5 S.W.3d at 655.

### ALTERNATIVE RELIEF

23.     In the alternative, if the Court denies any part of Defendants' motion for summary judgment, Defendants ask the Court to sign an order specifying the facts that are established as a matter of law and directing any further proceedings as are just. *See* TEX. R. CIV. P. 166a(e).

### CONCLUSION

24.     Defendants Jeremy Melcher, Morris Melchor and Lisa Melchor are entitled to judgment as a matter of law. This is an action based on negligence, yet Defendants Jeremy Melcher and Morris and Lisa Melchor did not owe any duty to Plaintiffs to prevent the damages under the circumstances of this case. Even if a duty to prevent damages did exist, none of these Defendants breached their duty. The summary judgment facts lead to only one conclusion: ███████ started the fire, and there



is no legal basis for imputing ▮▮▮▮▮▮▮▮ legal liability onto Defendants Jeremy Melchor, Morris Melchor or Lisa Melchor.

25. Therefore, the summary judgment evidence conclusively shows that there are no genuine issues of material fact regarding the Plaintiffs' claims, and Defendants Jeremy Melchor, Morris Melchor, and Lisa Melchor are entitled to judgment as a matter of law.

<div align="center">

**PRAYER**

</div>

WHEREFORE, Defendant requests that this Court grant this motion and sign an order for final summary judgment.

<div style="margin-left: 45%">

Respectfully submitted,

NAMAN, HOWELL, SMITH & LEE, PLLC
8310 Capital of Texas Highway North, Suite 490
Austin, Texas 78731
(512) 479-0300
FAX (512) 474-1901

BY: _____
James W. Goldsmith, Jr.
State Bar No. 24051570

ATTORNEYS FOR DEFENDANTS JEREMY DAVID MELCHOR, MORRIS G. MELCHOR and LISA MELCHOR

</div>

## NOTICE OF HEARING

Be advised that the above and foregoing Motion for Summary Judgment is set hearing on Tuesday, October 29, 2013 at 9:00 a.m. in the County Court at Law No. 2 of Travis County, Texas.

_____
James W. Goldsmith, Jr.

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing was served upon the parties and counsel of record for Plaintiff, as shown below, in accordance with Rules 21 and 21(a) of the Texas Rules of Civil Procedure, on the 27th day of September, 2013.

Paul C. Velte IV
Attorney at Law
109 E. Hopkins St., Ste. 204
San Marcos, TX 78666

**Sent Via Facsimile to: (512) 476-9504**

Mandy Edwards
693 Pickett Lane
Leander, TX 78641

**Sent Via Certified Mail, Return Receipt Requested**

_____
James W. Goldsmith, Jr.

CAUSE NO. C-1-CV-12-008224

DON TITEL & CAROL TITEL,        ) IN THE COUNTY COURT
   Plaintiffs,        )
          )
VS.                             ) AT LAW NO. 2
          )
JEREMY DAVID MELCHOR,           )
   Defendant.          ) TRAVIS COUNTY, TEXAS


*********************************************************

VIDEOTAPED ORAL DEPOSITION OF

JEREMY DAVID MELCHOR

MARCH 4, 2013

*********************************************************

VIDEOTAPED ORAL DEPOSITION OF JEREMY DAVID MELCHOR, produced as a witness at the instance of the Plaintiffs, and duly sworn, was taken in the above-styled and numbered cause on the 4th of March, 2013 from 1:03 p.m. to 2:25 p.m., before Amber Kirton, CSR, in and for the State of Texas, reported by machine shorthand, at the law offices of Naman, Howell, Smith & Lee, PLLC, 8310 Capital of Texas Highway, Suite 490, Austin, Texas, pursuant to the Texas Rules of Civil Procedure and the provisions attached hereto.



19

3

INDEX

Appearances.......................................   2
JEREMY DAVID MELCHOR
     Examination by Mr. Velte ......................   4
Signature and Changes.............................  66
Reporter's Certificate............................  68
Further Certification.............................  70


EXHIBIT

INDEX


NO. DESCRIPTION                                 PAGE
 1  Plat..........................................   7
 2  Letter to Paul Velte from Jeremy Melchor........  55

20

4

JEREMY DAVID MELCHOR,

having been duly sworn testifies as follows:

EXAMINATION

BY MR. VELTE:

Q. Hi. Is it Melchor or Melchor?

A. Melchor.

Q. All right. First name Jeremy?

A. Yes, sir.

Q. And what's your middle name?

A. David.

Q. What's your date of birth?

A. 12/23/76.

Q. Now, I sent a notice to your lawyer, Mr. Goldsmith, of a notice of intent to take your deposition today.

A. Yes, sir.

Q. And that notice -- did he provide you a copy?

A. Yes, sir.

Q. And so you saw in the notice where I said to bring some items with you?

A. I did, but I don't have any of those items.

Q. Okay. So I had asked you for three items. One was leases and deeds related to your residence known locally as 693 Pickett Lane.

A. Okay.

21

Q. All right. Now, who owns the land that is at 693 Pickett Lane?

A. My father.

Q. Okay. Now, that would be -- I want to draw you --

MR. VELTE: Let me get this marked.

(Exhibit No. 1 marked.)

Q. (BY MR. VELTE) I want to show you what we've marked as Deposition Exhibit No. 1, and I would submit to you that's a blow-up of the property tax plat records. And ask you to take a look at that. And do you see Pickett Lane and Ivy Lane on there?

A. Yes.

Q. And can you identify your property where you're living?

A. I believe it's this 355413, I think.

Q. Okay. And that would be that little blue square that's kind of in the -- I guess you'd say below Ivy Lane on that map?

A. Yes, sir.

Q. Okay. Now, how big is that parcel?

A. One acre.

Q. It's one acre, okay. And the larger parcel, do you know how big it is?

A. I think it's 18 -- 18 acres.

22

Q.  Okay.

A.  18 point something.  I'm not exactly sure.  I don't own it.

Q.  Now, the -- your father owns the one acre and the other 18.  Do you know who owns it?

A.  He has -- he owns it now.

Q.  Okay.  So he recently acquired that?

A.  Correct.

Q.  Okay.  Do you know who the previous owner was?

A.  I believe her name was Yolanda Rodriguez.

Q.  And when did your father acquire the other 18 acres there that surrounds --

A.  Don't know.  You'd have to talk to him.

Q.  You don't know a time frame?

A.  I don't know.

Q.  Well, I mean, was it last year?

A.  I think so.  I don't know exactly when, though.  It's not -- I don't -- it's his business, not mine.

Q.  Do you know why he bought it?

MR. GOLDSMITH:  Objection; form.

A.  Could you restate the question?

Q.  (BY MR. VELTE)  Do you know why your father bought the other 18 acres surrounding the acre that you're living on?

MR. GOLDSMITH:  Objection; form.

23

13

side of your map is missing.

Q. So it's further down Ivy Lane?

A. It's at the end, yes. They're the last house on the right at the dead-end.

Q. All right. So then you don't know the neighbors that live at 355406?

A. I don't know.

Q. And you don't know the Titels either that live across the road?

A. No, sir.

Q. Any other neighbors you know?

A. Just the ones I gave you.

Q. And you don't know the people on the other side of Pickett Lane?

A. No.

Q. Would you agree that in a perfect world it's a good idea to stay on good terms with your neighbors?

A. Yes, sir, and I am.

Q. You are?

A. With the ones that I know, yes, sir.

Q. Okay. Do you agree that it's a good idea to get to know your neighbors?

A. Yes, sir.

Q. Is it true that -- well, let's ask about who lives at your residence there at 693 Pickett Lane. At the

14

time of this fire in July of 2011 who was residing there at 693 Pickett Lane?

A. Myself, my son ███████ my other son ███████ and ███████████████ my daughter, and Mandy Edwards.

Q. Now, were there other kids there?

A. Yes.

Q. Who were they?

A. ██████████████████

Q. Any others?

A. I don't remember. I want to say ███████████ but I don't remember for sure if he was there or not.

Q. Okay. Now, let's talk about each one. So you have two boys, ███████ and ███████?

A. ███████ and ███████.

Q. ███████, I'm sorry. And ███████?

A. Correct.

Q. So a daughter and two boys?

A. Uh-huh.

Q. What's your relationship with Mandy Edwards?

A. She's my girlfriend.

Q. Y'all are not married?

A. No.

Q. Does she still reside there?

A. Yes.

Q. And does she have children by previous

relationship?

A. Yes.

Q. Okay. And who would those be?

A. I'm sorry, her children?

Q. Yes.

A. ███████████ and ██████████

Q. And how old is ████?

A. 13, I believe.

Q. Okay. And ████████?

A. Right now nine.

Q. And what is your relationship to ████ and ██████?

A. They're my girlfriend's kids.

Q. What about -- are all these children still residing there now?

A. No, sir.

Q. Okay. Where are -- where are they?

A. Well, ██████ lives with his mother now as of last year and ████████ and ████ haven't lived there. They live with their parent.

Q. Who are their parents?

A. ███'s is Daniel McKeever and ██████ is Kevin Smith.

Q. And so each of those boys is now living with their other parent?

16

A.   They have always, yes.

Q.   You said they have always lived with their other parents?

A.   Yes.

Q.   So they don't reside at your place?

A.   No.

Q.   Now, what about in July of 2011?  Were they residing at your place then?

A.   No, they were on visit.

Q.   So is it true they have never resided there, they have always just come and stayed, what, for short periods?

A.   Correct.

Q.   And how frequently was that, every first, third, fifth weekend?

A.   No.  I don't know dates, but it's just kind of sporadically.  I mean, ▉ lives in Alabama, not here, so I mean, it's kind of -- we can't get him first, third and fifth weekend.  I don't have money to do that.  ▉ lives in Bastrop and generally comes -- just depends.  Three to four weeks.

Q.   Whenever the parents agree?

A.   No, it's not necessarily that.  Just whenever he has time.  You know, they keep him pretty busy in school and different after-school functions and stuff so whenever he has time.

Edwards with six children.

A. Correct.

Q. Now, I think you named five.

A. Okay.

Q. Who would the sixth child have been?

A. I don't believe there was one. I believe the news misreported, like they generally do.

Q. All right. Now, what is your relationship with █? Does he call you Dad ever?

A. No.

Q. What does he call you?

A. Jeremy.

Q. And are you, like, his stepparent?

A. No.

Q. Whose job is it to discipline him?

A. I assume his mother and father.

Q. So you don't exercise any discipline over █ █?

A. No.

Q. What about the other child, Mandy's other boy, █?

A. No.

Q. No. So you let Mother do all the -- you let Mandy, as mother, exercise all the discipline over those two boys?

23

A. Yes, sir.

Q. Was ███ ever left in your care?

A. Not by himself, no.

Q. What about you and the other boys?

A. My kids?

Q. Yes.

A. Well, of course.

Q. So there are times, then, when you're the only adult there with those boys?

A. Definitely.

Q. So you had authority to supervise them?

A. When?

Q. Well, any time he was left in your care.

A. Yeah.

Q. Have you ever had to discipline him?

A. ███?

Q. Yes.

A. No.

Q. You've never had to spank him?

A. That's not my place. She's my girlfriend but not my wife. It's not my place to discipline her children.

Q. So your testimony is no?

A. Correct.

Q. You've never had to spank the boy. Have you ever had to punish him in any other way?

A. Testimony was no.

Q. Now, ███████████ father is Daniel McKeever and you say that he lives out of state?

A. Correct.

Q. What state does he live in?

A. Alabama.

Q. And have you ever met that man?

A. One time, yes, sir.

Q. Okay. And does he -- do you know what he does for a living?

A. I haven't got a clue.

Q. Do you know what city or county he resides in in Alabama?

A. No, sir.

Q. Do you know his phone number?

A. No, sir.

Q. What about ████'s father, Kevin Smith?

A. Are you asking me the same questions?

Q. Yes. Do you know where he resides?

A. Yes, sir.

Q. Where?

A. Bastrop.

Q. Do you know address?

A. No, sir.

Q. So he lives in the City of Bastrop?

28

Q. And where does she reside?

A. Smithville.

Q. Now, is ▮▮▮▮ older than ▮▮?

A. I think they're the same age. Hers is in May. I think they're the same age, a few months apart.

Q. Which one would be older?

A. Probably ▮▮▮▮ Maybe. I'm not certain.

Q. Okay. Now, regarding the five children, then, that would be at this residence at least on July 11th of 2011, who normally had charge of these five children?

A. While I was at work?

Q. Yeah.

A. Mandy.

Q. What was the usual routine -- daily routine? You went to work in the mornings?

A. Yes, sir.

Q. Okay. And you left her in charge of the children at home?

A. Correct.

Q. And is it true that the children were often left unsupervised?

A. No. That's false.

Q. Is it true that CPS has been called out to investigate?

A. That's true.

Q. Are you aware in the fire marshal's report where it says that Mandy Edwards sent the kids outside to eat lunch?

A. I haven't seen the report so I couldn't tell you.

Q. Okay. I would ask you -- are you a smoker?

A. Yes.

Q. Is Mandy Edwards a smoker?

A. I guess you could say that, yeah.

Q. Is it true that one or more of your children were smoking cigarettes at one point in the past?

A. False.

Q. So you're not aware that one of your boys offered a neighbor boy a cigarette?

A. No, I'm not.

Q. Another neighbor of yours says that your children run loose and are not supervised.

A. That's 100 percent false.

Q. Now, on the day of the fire where were you?

A. At work.

Q. At what location?

A. Cedar Park.

Q. At the Poky Jo's restaurant?

A. Smokey Mo's.

Q. Smokey Mo's. I'm sorry.

A. I'm sorry. You've called it three different

things since we've been sitting here.  Yes, 1431 and 183.

Q.  Okay.  And do you know who set the fire?

A.  No.

Q.  All right.  So as we sit here today, I guess a year and a half later, you don't know who started the fire?

A.  All I have is hearsay, so I don't know.

Q.  Well, what is the hearsay you have?

A.  What I heard was that ███████ set the fire, that they were going out to eat and that's -- I don't even know.  He found a lighter or something is what I've gotten from, I mean, everybody.  That's all I know.  I don't really know what actually happened that day.  I wasn't there.

Q.  But surely you've interviewed Mandy and the children about what happened, right?

A.  (Witness nods head.)

Q.  So what they're telling you is that ███████████ started it with a lighter?

A.  That's what I've heard, yes, sir.

Q.  And you've taken no interest in how that happened?  Do you know where it happened?  Do you know why it happened or any of that?

A.  I know where it happened.  I saw it after the fact.

Page 1

CAUSE NO. C1-CV-12-008224

| | | |
|---|---|---|
| DON TITEL | ) | IN THE COUNTY COURT |
| CAROL TITEL | ) | |
|     Plaintiffs | ) | |
| | ) | |
| VS. | ) | AT LAW NO. 2 |
| | ) | |
| JEREMY DAVID MELCHOR, | ) | |
|     Defendant | ) | TRAVIS COUNTY, TEXAS |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

VIDEOTAPED ORAL DEPOSITION OF

MANDY EDWARDS

April 1, 2013

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

VIDEOTAPED ORAL DEPOSITION OF MANDY EDWARDS, produced as a witness at the instance of the Plaintiffs, and duly sworn, was taken in the above-styled and numbered cause on the 1st day of April, 2013, from 12:59 P.M. to 2:25 P.M., before DOTTIE NORMAN, Certified Shorthand Reporter in and for the State of Texas, reported by machine shorthand, at the offices of The Texas Law Center, 1414 Colorado Street, Austin, Texas, pursuant to the Texas Rules of Civil Procedure and the provisions attached hereto.

34

A P P E A R A N C E S

FOR THE PLAINTIFFS:

      PAUL C. VELTE, IV
      Attorney at Law
      109 E. Hopkins St., Suite 204
      San Marcos, Texas  78666


FOR THE DEFENDANT:

      NAMAN HOWELL SMITH & LEE, PLLC
      By:  JIM GOLDSMITH
      8310 N. Capital of Texas, Suite 490
      Austin, Texas  78731

INDEX

PAGE

Appearances ......................................... 2
MANDY EDWARDS:
     Examination by Mr. Velte ......................... 4
     Examination by Mr. Goldsmith .................... 69
Correction Sheet .................................... 73
Signature Page ...................................... 74
Reporter's Certificate .............................. 75

EXHIBITS

| NUMBER | DESCRIPTION | PAGE |
|--------|-------------|------|
| 1 | Temporary Orders dated 10-8-09 | 6 |
| 2 | Citation | 7 |

MANDY EDWARDS,

having been first duly sworn, testified as follows:

EXAMINATION

BY MR. VELTE:

Q. All right. Your name is Mandy Edwards?

A. Yes, sir.

Q. And, Mandy, do you have a cell phone?

A. I do have a cell phone.

Q. Okay. If it goes off -- I mean, do you mind turning it off --

A. Oh, it's off, yes.

Q. -- so we can do -- okay. I just didn't want to have any interruptions.

MR. GOLDSMITH: Thanks for the reminder.

Q. (By Mr. Velte) Have you ever had your deposition taken before?

A. No, sir.

Q. Do you understand what a deposition is?

A. Kind of, somewhat.

Q. Has anybody explained it to you?

A. Just a little bit. I'm basically just here to tell my side of the story, the truth.

Q. Okay.

A. As much as I know.

Q. That's why you are sworn in.

31

A.    So I figured if that helps.

Q.    All right.

A.    That's the last known address that I do know of, so --

Q.    All right.

         MR. VELTE:    Let's mark that as Exhibit 2.

         (Exhibit No. 2 marked)

         MR. VELTE:    Can I see Exhibit No. 2?

Q.    (By Mr. Velte) So Exhibit 2 is three pages.  Let me just take a look at it.

A.    Uh-huh.  Okay.

         MR. GOLDSMITH:    Maybe we can take a couple of minutes just to look at both of them and then swap.

         MR. VELTE:    You want to switch?

         MR. GOLDSMITH:    Sure.

Q.    (By Mr. Velte) All right.  Let me ask you about Exhibit No. 2 first.

A.    Okay.

Q.    It states that it's a citation of -- apparently you sued Mr. McKeever regarding child support or child custody of ███████████

A.    Actually, he sued me.  He went for a summer visitation and then I was served with that.  And he didn't want to return his son, so that's what I was faced with.

Q.    Oh.  So you sent your son ███ to be with father for

the summer?

A. Uh-huh, in 2009.

Q. And he didn't return him?

A. Yeah.

Q. I see. So you had to -- you sued in Texas?

A. Yes.

Q. And did Mr. McKeever sue in Alabama?

A. No. Actually, that case is still open. And for two years I have been trying to contact his lawyer and nothing.

Q. Okay.

A. Sorry. That -- that case is a little sensitive, but --

Q. Yeah, I'm sure. I'm sorry to hear that. I'm just trying to wrap my brain around what the situation is. The -- █████ is your son?

A. Yes.

Q. Okay. And how old is he now?

A. He's 9 now.

Q. Okay. And his father lives in Alabama?

A. Correct.

Q. And when in 2009 you sent ███ to be with him and he didn't return, you initiated this action here in Williamson County. Did you get -- his name is Daniel?

A. Daniel McKeever.

Q. Yeah. Did Daniel respond to the lawsuit? Did you

Q. At the time, though, that the fire began, you had several children under your supervision?

A. Correct.

Q. And this is at 693 Pickett Lane?

A. Yes.

Q. All right.

A. Yes.

Q. And was there any other adult present?

A. Yes. Actually, the reason there was more children was because we had hired a construction worker. He was remodeling our house at the time. And his son was similar in age to all the -- our children. He asked if he could bring him. I said, "That would be fine. They can play, you know." So it was Shane Painter. He was the construction worker that was remodeling our house, and also a Jerod Duncan which is Jeremy's half-brother from Katy, Texas. He was there as well. He was visiting, looking for employment up here actually.

Q. Okay. Okay. Now, who else was present besides Shane, Jerod and you? It was just the children?

A. Children. His son. Gosh. What is his name?

Q. Shane's son?

A. Shane's son. I'm sorry. I can't remember his name.

Q. Okay.

A. And then my son, ▮▮▮▮▮

Q. Okay.

A.   And ████████████████.

Q.   Okay.

A.   And then Jeremy's three children, ████████████,
████████████ and ████████████████.

Q.   I'm sorry.  I missed -- it was ████████, ████████ and
who?

A.   ████████, ████████.  Did you get ████████?

Q.   And ████n.  Oh, is it ████████ you said?

A.   ████████.

Q.   Okay.  ████████ --

A.   There is a ████████ and a ████████.

Q.   And a ████████.  That's what I was missing.  Okay.
All right.  So we had five children?

A.   Correct.

Q.   Okay.  What is your profession?

A.   As of right now I am a -- my title has changed.  I
guess you can call me a kennel technician.  I just got promoted
to -- I'm kind of doing everyone's job.  Office manager.  I
don't know.  I just say kennel technician.

Q.   What is a kennel technician?

A.   It's a -- it's at a -- it's in -- it's called
Southern Star Ranch.  It's a boarding and kennel facility,
canine training center.

Q.   Okay.  And that's where you work now?

A.   Yes.

Q.   And what about for the past few years?

A.   Self-employment.  I have just -- I have cleaned houses.  The main reason I did that -- I started that in 2000 was to revolve my life around my children.  So I cleaned houses.

Q.   Okay.

A.   In the mix in between, the 13 years, I have gone to college.  I've, you know, done everything else, but my priority, main source was cleaning houses.

Q.   And what were you doing in July 2011 for work?

A.   Actually, at that time I was not employed.  I was cleaning Jeremy's father's house every two weeks and that was my only -- my, I guess, job you could say was staying at home.  I was the house -- not housewife because I'm not his wife.  You know, I stayed home and took care of the house and the kids and everything in between.

Q.   Okay.  So when did you -- or how did you meet Jeremy Melchor?

A.   Smokey Mo's Bar-B-Q --

Q.   Okay.

A.   -- where he was working at the time.  Well, still is, but --

Q.   And when did you move in with him?

A.   It was October 2010.

Q.   Okay.  And that was at 693 Pickett Lane?

A.   Yes.

Q.   Okay.   What is your relationship with Jeremy Melchor now?

A.   We're still boyfriend and girlfriend.

Q.   All right.   So you were pretty much at that point in time a stay-at-home mom or did you do these side jobs, too?

A.   Pretty much stay-at-home mom.   I was only cleaning for his father until I figured out what I was going to do with my career.   It was always my goal to get in the veterinarian field.   And then in November 2012 -- yes, 2012, that's when I found this ad on Craigslist for Southern Star Ranch.

Q.   Uh-huh.

A.   And that's my -- my new career.

Q.   Okay.   The work you did for Morris Melchor, Jeremy's father --

A.   Yes.

Q.   What did that entail?

A.   House cleaning.   That was a detailed house cleaning every two weeks.

Q.   Just one house or --

A.   Yeah, just his --

Q.   -- several?

A.   No, just his house.

Q.   Okay.   Can you describe the place at 693 Pickett Lane?   What kind of place is it?

43

with the drought, et cetera, et cetera. We just assumed it was another brush fire and it jumped through the property. You know, and we tried to backtrack where we thought they had their lunch, is what we were told. There was never a lighter found. There was never nothing. So -- and all we heard was "We seen a fire and it went boom and boom," and that's all we got out of it. And then --

Q. Okay. So do you recollect ██ and ██████ telling -- Daniel Berger, I would submit, is the deputy fire marshal's name. Do you recall them telling him that they had used a lighter to start the fire?

A. I recall ██ -- he finally -- I can't remember. It was in the evening. It was dark. That whole entire day, I mean they -- everyone -- the fire marshals, the officers were just interro -- just pounding on him like, you know, like "You started it. You started it." He finally just gave in and said, "Okay, I started it." He said, "The only reason I did because I wanted to have a campfire for our lunch." I packed them a lunch to go outside, which was a normal thing they did. And he said, "I learned in Boy Scouts how to start a -- you know, a small fire and I thought I could put it out." And that was it. And then we never -- after that never even seen the fire report.

And, again, the lighter was never found. So I don't know if he -- ██ is the kind that will take blame for

A. Yeah. That's when he was just like "I did" -- you know, "I started the fire." And I'm like "Well, we need to go talk to the fire marshal and discuss this."

Q. So you are the one then that when you got ▇ alone you were able to get him to confess the truth to you?

A. Not necessarily.

Q. Well, then why did you -- I don't understand. I mean, you're saying --

A. Because at the time we were all upset and we were talking about the possibilities of what can happen with a fire if they were to start it. We didn't know at the time. Their story was very consistent as far as they just went to have a lunch, et cetera, et cetera. And then he literally was just like "Okay, Mom," you know. He's like "I started the fire."

It totally threw me off. I said, "Well, let's go discuss this with the fire marshal and figure out what's going on. And if you did," I said, "of course we need to tell the truth and we need to acknowledge that."

Q. Uh-huh.

A. But just how all of a sudden, it's still a mystery to me because I don't understand -- I don't know if he just got to the point where he's like "I'm tired of hearing this. Let me just say it so I can get it over with." Maybe make things better is what I'm thinking. He was seven years old at the time. He doesn't have the mental capability of, first of all,

having the intention of setting a fire purposefully. I think that he was just -- everyone -- I mean, I can't even explain how many people were there just on his butt, you know.

Q. How many people were there?

A. The fire marshal, all the constables, the sheriff, just everyone in general from the whole entire day. Like I say, that --

Q. What about those other two men that you said, Jerod and the other gentleman?

A. Shane?

Q. The carpenter guy.

A. Uh-huh.

Q. Was he there, too?

A. Yes. Well, they left. I don't recall exactly what time they left. I mean, they stuck around a little while. I don't recall. Well, Jerod was staying actually for a week. Shane -- I don't remember exactly what time he left. But after he gathered his emotions and everything calmed down, then he left for the evening.

Q. Okay. That was after the fire had been --

A. Yeah, after they --

Q. -- called in?

A. -- finally got it out and --

Q. Okay. Now, did those two men help you get out of there with all the kids?

A.    Well, I was cooking -- I'm trying to backtrack.  I was cooking lunch for the other children.  Shane, the painter -- he came running in the house and just said, "There's a fire.  You need to get everyone out."  That's all I heard.  So I got all the kids out, gathered them in the truck.  And then █████ is like "My turtle."  So then we had to go back and gather all the animals and we took off.  And, like I say, it happened just so fast.

Q.    Uh-huh.

A.    And all I knew was to get the kids out of there.  All I seen was black smoke in the air.  I just knew get out.  And Shane stayed.  And it scared me to death.  I kind of waited for him.  I was like "You can't stay here."  I didn't know which way -- I, of course, didn't know what was going on.  Calling Jeremy.  He was at work.  I said, "Can you -- you need to come home.  There's a fire."

I proceeded I believe to call 911.  And after that, like I say, it was very -- everything happened so fast that day.  My goal was to get out of there, but then I'm thinking in my mind Shane is still there.  It's like "He can't, you know, stay there," so I just --

Q.    So Shane was the first one to see this fire?

A.    From my knowledge, yes, because he came in and told me.  I was cooking lunch, like I said, for the other children.  And he just came running in the house.  "There is a fire.  Get

1

CAUSE NO. C-1-CV-12-008224

DON TITEL & CAROL TITEL,      ) IN THE COUNTY COURT
        Plaintiffs,           )
                              )
VS.                           ) AT LAW NO. 2
                              )
JEREMY DAVID MELCHOR,          )
        Defendant.            ) TRAVIS COUNTY, TEXAS


*********************************************************

ORAL DEPOSITION OF

DONNIE LEE TITEL

MARCH 4, 2013

*********************************************************

ORAL DEPOSITION OF DONNIE LEE TITEL, produced as a witness at the instance of the Defendant, and duly sworn, was taken in the above-styled and numbered cause on the 4th of March, 2013 from 9:20 a.m. to 10:39 a.m., before Amber Kirton, CSR, in and for the State of Texas, reported by machine shorthand, at the law offices of Naman, Howell, Smith & Lee, PLLC, 8310 Capital of Texas Highway, Suite 490, Austin, Texas, pursuant to the Texas Rules of Civil Procedure and the provisions attached hereto.



48

3

INDEX

Appearances.......................................   2
DONNIE LEE TITEL

    Examination by Mr. Velte......................   4
Signature and Changes............................  51
Reporter's Certificate...........................  53
Further Certification............................  55

EXHIBIT

INDEX

NO. DESCRIPTION                              PAGE

 A  MapQuest 105 Ivy.............................  20
 B  MapQuest 105 Ivy.............................  20
 C  MapQuest 693 Pickett Lane...................  23
 D  MapQuest 693 Pickett Lane...................  23
 E  Titel Damages Summary.......................  30



4

DONNIE LEE TITEL,

having been duly sworn testifies as follows:

EXAMINATION

BY MR. GOLDSMITH:

Q. Mr. Titel, please state your full legal name for the court reporter.

A. Donnie Lee Titel.

Q. Mr. Titel, my name is Jim Goldsmith and I'm an attorney that's been retained by Jeremy David Melchor in a lawsuit that you filed against him as a result of an incident on July 11th, 2011. Do you understand who I am and who I represent?

A. Yes.

Q. And you understand that your purpose here today is to offer sworn deposition testimony so that we can find out what you might say in a trial if we were go to a trial of this matter. Does that make sense?

A. Yes.

Q. One of the things that we need to take care of on the outset is some ground rules on how we're going to speak to each other. And the reason we do that is because the court reporter is typing down everything that I say and everything that you say. And so if we can get some ground rules on how we speak to each other it will make her job a whole lot easier and we'll have a much clearer

7

oath that you would take in a court of law in front of a jury and a judge. Do you understand that?

A. Understood.

Q. So your obligation here as in court would be to tell the whole truth to the best of your knowledge. Can we agree on that?

A. Yes.

Q. And I want to be clear also, I'm not trying to hide the ball, but if for some reason you were trying to say X in answer to a question today and then in court later after you've sworn the same oath you were to answer Y, I'd be entitled to show the jury the transcript of today's testimony and say, you know, you testified two different ways under oath. And the reason I do that is to imply that you might be being untruthful. Is that fair?

A. That's understood.

Q. Understood. May not be fair, but I want to be clear on why we might do that. I don't want to hide the ball for you. All right. Let's start with just a little bit of background information for you. Your date of birth?

A. May the 26, 1947.

Q. And for identification purposes the last four numbers of your social security number?

A. 3465.

39

chicken coop -- okay. The chicken coop, maybe that was a later deal, but that was a loss and I didn't have to fix the coop in the first month. But water and some things. I actually -- I made some purchases right away, which then -- see, and right now the way this list stands you said I've made modifications to, that's true because this is things not covered by the insurance now is the way it finally kind of broke out.

Q. So these are things -- I want to make clear. This does not include the things that the insurance company paid for?

A. Yeah. This is just -- that's correct. This is only the things they didn't pay for. But that was all unclear back then. Because your question was about this list. So I'm trying to remember the way this came to be. But it was handwritten, it was a Big Chief Tablet. It evolved and there was yeses and nos, subtractions, adds and drops. And then this whole subrogation thing came in, which I didn't understand. It was at some point where I said I need some help here and that's when I contacted Mr. Velte and said I'm lost here, I don't know what's going on, I need some help.

Q. Let's talk a little bit about the different types of property that were at your Ivy location and what damages they sustained. Let's start with buildings. You

53



## NAMANHOWELL
## SMITH&LEE PLLC
### ATTORNEYS AT LAW

8310 N. Capital of Texas Hwy.
Suite 490
Austin, Texas 78731
(512) 479-0300
Fax (512) 474-1801

Offices in:
■ Austin
■ Fort Worth
■ San Antonio
■ Waco

www.namanhowell.com

September 27, 2013

**Via E-Filing**

Ms. Dana DeBeauvoir
Travis County Courthouse
1000 Guadalupe, Room 211
Austin, Texas 78701

      RE:    Cause No. C-1-CV-12-008224; *Don Titel and Carol
              Titel vs. Jeremy David Melchor*; In the County
              Court at Law No. 2 of Travis County, Texas

              Firm File No. 34725-500

Dear Ms. DeBeauvoir:

    Please find enclosed a **Motion for Summary Judgment** filed on behalf of Defendants Jeremy David Melchor, Morris G. Melchor and Lisa Melchor. A Notice of Hearing is incorporated within the Motion, and reflects that this Motion is set for hearing on Tuesday, October 29, 2013 at 9:00 a.m.

    Pursuant to the Texas Rules of Civil Procedure, a copy of the Motion has been forwarded to all parties and counsel of record on this date.

    Thank you for your assistance in this matter.

                    Very truly yours,

                    NAMAN, HOWELL, SMITH & LEE, PLLC

                    By:                   
                        James W. Goldsmith, Jr.

JWG/jwg
Enclosure

{02569857.DOCX / }

54

cc:     (w/enclosure)

Paul C. Velte, IV          SENT VIA FACSIMILE TO: (512) 476-9504
109 E. Hopkins St.
Suite 204
San Marcos, Texas 78666

Mandy Edwards          SENT VIA CERTIFIED MAIL, RETURN RECEIPT REQUESTED
693 Pickett Lane
Leander, TX 78641

Clients          SENT VIA E-MAIL

{02569857.DOCX / }

55